**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| IN RE ) | Case No. 15-41404-705 |
| ) | |
| GREEN JACOBSON, P.C., ) | |
| ) | Hon. Charles E. Rendlen |
| Debtor. ) | |
| ) | Chapter 7 |
| ) | |
| ) | Hearing Date:  May 27, 2015 |
| ) | Hearing Time: 9:30 a.m. |
| ) | |

**MOTION FOR RELIEF FROM THE STAY TO PERMIT**
**APPEAL TO PROCEED**

Comes now SKMDV Holdings, Inc. (f/k/a DataVerify, Incorporated)  ("DataVerify"), by its undersigned counsel, and for its Motion for Relief from the Stay to Permit Appeal to Proceed (the "Motion") states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2. The statutory predicate for the relief requested herein is 11 U.S.C. § 362(d).

**BACKGROUND**

3. On July 1, 2011, DataVerify filed a lawsuit against Green Jacobson, P.C. ("Green Jacobson") in the Circuit Court for St. Louis County (the "State Court") alleging that Green Jacobson committed legal malpractice when it represented DataVerify in the sale of its business (the "Malpractice Case").  Green Jacobson vigorously contested the Malpractice Case for the next three years, but on November 12, 2014 a jury found that Green Jacobson did commit malpractice and awarded DataVerify $10.5 million in damages (the "Malpractice Judgment").

4.     DataVerify then began its efforts to collect on the Malpractice Judgement. DataVerify served garnishments on third parties and written discovery on Green Jacobson and its shareholders. Much of this post-judgment discovery was designed to learn the whereabouts of nearly $3.9 million in fees Green Jacobson was paid in September of 2014, just before the trial began on the malpractice case. This almost $3.9 million in fees were paid to Green Jacobson as one-half of its allowed fee as class counsel in a class action case in the U.S. District Court for the District of New Jersey (the "TWA Pilots Case"). The remaining one-half of Green Jacobson's allowed fees in the TWA Pilots Case ("Remaining Green Jacobson TWA Fees") have not yet been paid because of two appeals filed in that case.

5.     But Green Jacobson refused to answer any of DataVerify's post-judgment discovery. Instead, the firm invoked its purported Fifth Amendment privilege against self-incrimination despite a long line of cases holding that the privilege does not apply to collective entities and protects "only the natural individual from compulsory incrimination through his own testimony or personal records." United States v. White, 322 U.S. 694, 700, 64 S. Ct. 1248, 1252, 88 L. Ed. 1542 (1944). Green Jacobson also refused to identify its account debtors, arguing that the identity of its clients was subject to the attorney-client privilege, an argument that has been flatly rejected in countless Missouri cases through the years. *See generally* State ex rel. Koster v. Cain, 383 S.W. 3d 105, 119 (Mo. App. 2012) and cases cited therein.

6.     Green Jacobson also requested the State Court to stay DataVerify's collection efforts and to appoint a Receiver to take charge of its properties. On February 27, 2015, the State Court granted these requests (without requiring Green Jacobson to post a bond) and entered a proposed order substantially in the form submitted by Green Jacobson. Notably, the receivership order did not empower the Receiver to pursue fraudulent transfers under the

Missouri Uniform Fraudulent Transfer Act or other applicable law.

7.  A few days later, on March 3, DataVerify filed an involuntary bankruptcy petition against Green Jacobson. Green Jacobson moved to dismiss the involuntary bankruptcy case (the "Motion to Dismiss"). DataVerify deposed the firm's Rule 7030(b)(6) corporate representative in connection with the Motion to Dismiss. During that deposition, DataVerify finally learned what happened to the almost $3.9 million paid to Green Jacobson in the TWA Pilots Case. Over 97% of the fees paid were upon receipt immediately distributed to Green Jacobson's shareholders and employees as follows:

| Payee | Amount |
|---|---|
| Jonathan F. Andres – shareholder | $750,000 |
| Martin M. Green – shareholder | $1,053,824 |
| Joe D. Jacobson – shareholder | $750,000 |
| Allen P. Press – shareholder | $750,000 |
| Matthew B. Vianello – associate | $50,000 |
| Deborah Mann – office manager | $400,000 |
| Other employees | $30,000 |

In addition, DataVerify learned for the first time during this corporate representative deposition that Green Jacobson repaid within one year of filing over $300,000 in antecedent loans made to the firm by Martin Green. The distributions and payments described in this paragraph are collectively referred to as the "Insider Payments" and the recipients are the "Insiders".[1]

8.  Green Jacobson also drained its operating account shortly after the Malpractice Judgement was entered. On November 21, 2014, the same day that DataVerify filed a notice of intent to garnish, Green Jacobson withdrew $200,000 from its operating account at Enterprise Bank and opened a new account at New Frontier Bank in St. Charles County. By December 8,

---

[1] DataVerify does not intend to include the "other employees" having received in total only $30,000 within the definition of "Insiders" that receive "Insider Payments".

2014, only $5,570.72 remained in the Enterprise account. Green Jacobson closed its doors on December 31, 2014 and its former shareholders scattered into various new firms, taking with them the firm's existing cases.

9. The Insiders have also attempted to prejudice Green Jacobson's interest in the Remaining Green Jacobson TWA Fees. On February 24, 2015, the new law firm established by former Green Jacobson partners Joe Jacobson and Allen Press, filed a pleading in the TWA Pilots Case where they asserted that the lawyers of Green Jacobson, and not the firm itself, were appointed class counsel in that case. Upon information and belief, Jacobson and Press have taken the position that the Remaining Green Jacobson TWA Fees should be paid to them, and not Green Jacobson.

10. Green Jacobson has a malpractice insurance policy issued by Federal Insurance Company ("Federal") that covers a portion of the Malpractice Judgment (the "Policy"). The amount of coverage remaining on the Policy is $2,558,240.[2] DataVerify served a garnishment on Federal shortly after the Malpractice Judgment was entered. Federal then filed an interpleader action in Missouri state court, which DataVerify thereafter removed to the U.S. District Court. DataVerify expects that this interpleader action (the "Interpleader Case") will have been referred to this Court before the scheduled hearing on this Motion.

11. Green Jacobson appealed the Malpractice Judgment but did not obtain a stay of execution or post a supersedeas bond. The appeal is currently pending in the Missouri Court of Appeals, Eastern District, Case No. 102493 (the "Appeal").

12. Green Jacobson retained Michael Gross, Esq. to represent the firm in the Appeal.

---

[2] The original policy limit was $5 million but the costs of the defense of the Malpractice Case were paid from the Policy, meaning that Green Jacobson spent an astounding $2.4 million defending the Malpractice Case. By contrast, DataVerify's fees for prosecuting the case were approximately $900,000.

Green Jacobson paid Mr. Gross a cash retainer of $100,000 (the "Gross Retainer") in January of 2015. DataVerify has recently learned that Mr. Gross drew down $35,000 of the Gross Retainer or about April 15, 2015, more than five weeks after the involuntary case was filed and within a day or two of the hearing on the Motion to Dismiss.

13. Green Jacobson eventually withdrew the Motion to Dismiss and an order for relief under Chapter 7 was entered on April 16, 2015. David A. Sosne is the bankruptcy trustee (the "Trustee") for Green Jacobson.

## APPLICABLE LAW

14. The Appeal is stayed by the automatic stay of 11 U.S.C. §362(a). See <u>Farley v. Henson</u>, 2 F.3d 273 (8th Cir. 1993)(appeal by a debtor of a case in which the debtor originally was the defendant is subject to the automatic stay).

15. This Court may grant relief from the automatic stay for "cause". 11 U.S.C. §362(d)(1). "Cause", of course, is not defined in the Bankruptcy Code, but Bankruptcy Courts should balance the relative benefits and burdens on the parties in determining whether relief should be granted for "cause". *See generally*, <u>In re Loudon</u>, 284 B.R. 106 (8th Cir. BAP 2002).

## RELIEF SHOULD BE GRANTED SO LONG AS ALL PARTIES' RIGHTS ARE PRESERVED

16. Green Jacobson has only a handful of creditors and DataVerify's claim will, if upheld on appeal, ultimately account for the vast majority of the allowed claims against the bankruptcy estate. DataVerify submits that a prompt resolution of the Appeal is in the best interests of Green Jacobson, DataVerify, the Trustee and the recipients of the Insider Payments.

17. DataVerify further submits that this Court should grant relief from the automatic stay under Section 362(d)(1), but that such relief be fashioned to include the following additional terms ("Proposed Relief"):

a) The stay is lifted so that the Appeal may proceed until it is resolved by an order of the Court of Appeals or such other court that may hereafter have jurisdiction over the Appeal.

b) While the Appeal is pending, the Trustee shall not commence litigation against any of the recipients of the Insider Payments for the avoidance of such payments under Chapter 5 of the Bankruptcy Code.

c) Attorney Gross should return the remaining portion of the Gross Retainer to be held by the Trustee in escrow ("Trustee Escrow")[3] pending a resolution of the Appeal. Mr. Gross is free to file a "gap period" claim for the $35,000 that he paid himself and all parties would reserve their rights to object to any such claim.

d) Green Jacobson's shareholders should bear all additional expenses of prosecuting the Appeal. If the Appeal is successful, the shareholders could seek reimbursement from Green Jacobson or the Policy for the Appeal-related expenses they paid.

e) In settlement of the Interpleader Case, Federal should pay the remaining Policy proceeds to the Trustee to be held in the Trustee Escrow, subject to DataVerify's judgment lien. If the Appeal is unsuccessful, the Policy proceeds would be immediately paid to DataVerify because of its judgment lien. If the Appeal is successful, the Policy proceeds would be returned to Federal.

f) The Insiders should pay the amount of the Insider Payments (net of any income taxes that were withheld) to the Trustee to be held in the Trustee Escrow pending resolution of the Appeal. If the Appeal is successful, the Trustee would return these sums to the Insiders. If the Appeal is unsuccessful, these sums would continue to be held by the Trustee until the resolution of any avoidance actions that may be commenced by the Trustee against the Insiders.

g) Green Jacobson shall cooperate with the Trustee in all respects with the Trustee's administration of the bankruptcy estate pending a resolution of the Appeal.

18. The Proposed Relief achieves the appropriate balance of the respective rights of all of the parties. Green Jacobson and its Insiders have the right to seek review of the Malpractice Judgment by the appellate courts, and the Proposed Relief preserves that right. On the other hand, the only beneficiaries of a Green Jacobson victory on the Appeal are the Insiders,

---

[3] The term "Trustee Escrow" as used in this Motion is intended to refer to a process where assets are transferred to the Trustee to be held in trust for the benefit of all interested parties until the Appeal is resolved and invested in accordance with the requirements of 11 U.S.C. §345 or in such other manner as approved by the Court. The precise terms of the Trustee Escrow would be worked out by the parties and approved by the Court.

6165236.3 - 6 -

Case 15-41404   Doc 86   Filed 05/11/15   Entered 05/11/15 09:16:17   Main Document
Pg 7 of 9

so it is entirely appropriate that they, and not the bankruptcy estate, bear the expense of pursuing the Appeal.  If the Appeal is successful, the Proposed Relief expressly contemplates that the Insiders preserve their rights to look to Green Jacobson and/or the Policy for reimbursement of any Appeal-related expenses that they paid.

19.     DataVerify holds a valid and unavoidable judgment lien on the Policy because it garnished Federal after the Malpractice Judgment was entered.  Moreover, since Green Jacobson did not obtain a stay of execution, DataVerify would be entitled to immediate payment of the Policy proceeds absent the automatic stay.  The proposed relief adequately protects DataVerify's interests in the Policy proceeds by eliminating the continued expense of the Interpleader Case and safeguarding the Policy proceeds through the Trustee Escrow pending a resolution of the Appeal.

20.     A final resolution of the Appeal could easily take 12 or more months.   During this delay, the Trustee is faced with an untenable dilemma: he can either file the avoidance actions against the Insiders now, with the theoretical prospect that the Appeal could succeed and thereby moot the avoidance actions, or he can wait to bring the avoidance actions until the Appeal is resolved unfavorably for Green Jacobson and risk that the Insiders will have made collection more difficult in the meantime.    The Proposed Relief appropriately balances the parties' respective interests by requiring the Trustee to wait until the Appeal is resolved before filing the avoidance actions but ensuring that the Trustee's ultimate source of recovery is preserved.  Furthermore, nothing in the Proposed Relief would eliminate the Shareholders' ability to contest the Trustee's avoidance claims in the future.

21.     DataVerify expects that the Insiders will complain about the prospect of returning the Insider Payments to the Trustee pending a resolution of the Appeal.  The Insiders, however,

6165236.3                                                                - 7 -

have no one to blame but themselves.  The Insiders have already (a) caused Green Jacobson to invoke a meritless claim of a Fifth Amendment self-incrimination privilege, (b) caused Green Jacobson to invoke a meritless claim of attorney-client privilege, (c) attempted to conceal the Insider Payments by objecting to post-judgment discovery, (d) attempted to insulate themselves from avoidance liability by depriving the state court receiver of the authority to bring fraudulent transfer claims, (e) manipulated Green Jacobson's bank accounts to frustrate DataVerify's collection efforts, and (f) taken the position in the TWA Case that Green Jacobson is not entitled to the Remaining Green Jacobson TWA Fees.   Given the Insiders' conduct to-date, the bankruptcy estate has a legitimate concern that the Insiders could take advantage of the delay caused by the Appeal to shield their assets from collection by the Trustee.

WHEREFORE, DataVerify respectfully requests this Court to enter its order incorporating the Proposed Relief, and for such other and further relief as the Court deems just and equitable.

Dated: May 11, 2015

                                          Respectfully submitted,

                                          THOMPSON COBURN LLP

                                          By:  */s/ David A. Warfield*
                                               David A. Warfield, 34288MO
                                               Brian W. Hockett, 52984MO
                                               One US Bank Plaza
                                               St. Louis, Missouri  63101
                                               314-552-6000
                                               dwarfield@thompsoncoburn.com
                                               bhockett@thompsoncoburn.com

                                       *Attorneys for SKMDV Holdings, Inc. (f/k/a DataVerify, Incorporated)*

## CERTIFICATE OF SERVICE

 The undersigned hereby certifies that a copy of the foregoing instrument was e-filed and served through the Court's CM/ECF electronic mail noticing system on the attorneys of record on this the 11th day of May, 2015 and also sent by first-class mail to the following:

Allen Press
Jacobson Press & Fields, P.C.
168 North Meramec Ave., Suite 150
Clayton, MO 63105

Martin M. Green
Law Offices of Martin M. Green, P.C.
7733 Forsyth Blvd., Suite 700
Clayton, MO 63105

Joe Jacobson
Jacobson Press & Fields, P.C.
168 North Meramec Ave., Suite 150
Clayton, MO 63105

Jonathan F. Andres
Jonathan F. Andres, P.C.
7733 Forsyth Blvd., Suite 700
Clayton, MO 63105

Matthew Vianello
Jacobson Press & Fields, P.C.
168 North Meramec Ave., Suite 150
Clayton, MO 63105

Deborah Mann
7733 Forsyth Blvd., Suite 700
Clayton, MO 63105

Federal Insurance Company
c/o David Thomas Ahlheim
Nelsen & Lee, P.C.
1010 Market Street, Suite 500
St. Louis, MO 63101

Thomas Joseph Magee
HeplerBroom LLC
211 North Broadway, Suite 2700
St. Louis, MO 63102

Michael Gross Law Office
231 South Bemiston Ave. #250
St. Louis, MO 63105

Courtroom Technology Consultants, Inc.
c/o Joan M. Swartz
Law Offices of Joan M. Swartz
8050 Watson Road, Suite 355
St. Louis, MO 63119

Green Jacobson, P.C.
7733 Forsyth Blvd., Suite 700
Clayton, MO 63105

/s/ David A. Warfield