| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS** | **DEFENDANTS** |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |
| **CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED) ||

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought ||

1660831

(L.F. 18 Rev. 06/08)

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | | |
|---|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE | | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet. When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 15-41404-705 |
| | ) | Honorable Charles E. Rendlen, III |
| GREEN JACOBSON, P.C., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| DAVID A. SOSNE, in his capacity as | ) | |
| Chapter 7 Trustee for Green Jacobson, P.C., | ) | |
| | ) | **ADVERSARY COMPLAINT** |
| Plaintiff, | ) | |
| | ) | Adversary No. |
| vs. | ) | |
| | ) | |
| JONATHAN F. ANDRES, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## ADVERSARY COMPLAINT

COMES NOW Plaintiff David A. Sosne, the duly appointed and acting Trustee in Bankruptcy for Debtor's underlying bankruptcy estate, by and through his undersigned counsel, and for his Complaint states as follows:

### JURISDICTION AND VENUE

1. An involuntary petition in bankruptcy was commenced against Green Jacobson, P.C., a Missouri professional corporation ("Debtor") on March 3, 2015 ("Petition Date") in the United States Bankruptcy Court, Eastern District of Missouri, Eastern Division, case number 15-41404-705.

2. On April 15, 2015, Debtor consented to an order of relief under Chapter 7 of the United States Bankruptcy Code.

3. On April 16, 2015, the Court entered its order granting relief under Chapter 7 for Debtor. Plaintiff, David A. Sosne ("Trustee"), was appointed Chapter 7 Trustee of Debtor's case on April 16, 2015.

4. David A. Sosne is the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate of Debtor.

5. Defendant Jonathan F. Andres is an individual residing in the State of Missouri.

6. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri.

7. Venue of this action is proper pursuant to 28 U.S.C. §1409.

8. This matter constitutes a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A), (E), (F) and (O), and arises under Title 11 and in the Chapter 7 bankruptcy case of Debtor, presently pending before the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division, Case Number 14-45824-659.

## FACTS COMMON TO ALL COUNTS

9. For many years prior to the Petition Date, Debtor was a professional corporation doing business as a law firm providing legal services to various clients in Missouri and other states.

10. Debtor was incorporated in the State of Missouri on December 23, 1994. Debtor's name at the time of its incorporation was "Green Schaaf & Margo, P.C."

11. In or about 2006, Debtor changed its name to "Green Jacobson & Butsch, P.C." Debtor subsequently changed its name to "Green Jacobson, P.C." in or about November, 2008. Debtor continued to operate its law firm business in the "Green Jacobson, P.C." name from in or about November, 2008 through at least November 15, 2014.

12. Defendant was an employee of Debtor from at least 2002 until at least November 15, 2014. At all such times, Defendant was and still is an attorney licensed to practice law in the State of Missouri.

13. From at least 2009 through at least November 15, 2014, Defendant owned twenty-five percent (25%) of the outstanding issued stock of Debtor (with attorneys Joe Jacobson, Martin Green and Allen Press each owning twenty-five percent (25%) thereof).

14. From at least 2009 to at least November 15, 2014, Defendant was a member of Debtor's four-person board of directors (with attorneys Joe Jacobson, Martin Green and Allen Press being other directors).

15. From at least 2002 to at least November 15, 2014, Defendant was a Vice President of Debtor.

16. Beginning in 2006, Debtor and its attorneys served as Plaintiffs' Class Counsel (along with co-counsel) in a class action lawsuit captioned *Brady, et al v. Air Line Pilots Association, International*, civil action number 02-2917, in the United States District Court for the District of New Jersey (hereafter the "TWA Pilots' Case").

17. The TWA Pilots' Case involved claims by various TWA (Trans World Airlines) pilots who sued their union for loss of certain seniority benefits.

18. In late 2007, Debtor, by and through one or more of its attorneys, is alleged to have committed professional negligence by failing to ensure that a final Asset Purchase Agreement ("APA") contained a revenue multiplier to be used in the calculation of a contingent payment (the "Revenue Multiplier") due three years after the asset sale. Ultimately, the value of that Revenue Multiplier was $42.5 million dollars.

19. In August 2010, Debtor discovered its error and, while researching possible avenues for fixing its mistake, at its client's expense, Debtor concealed its discovery from

1659522-1                                                         3

SKMDV Holdings, Inc. ("SKMDV"), its client and the petitioning creditor in Debtor's underlying bankruptcy case.

20. At the same time, Debtor continued to represent SKMDV in negotiations to obtain a final contingency payment under the APA. In late September 2010, the purchaser under the APA, *not Debtor or its attorneys*, advised SKMDV for the first time that the $42.5 million dollar Revenue Multiplier was not in the APA.

21. Upon learning of SKMDV's knowledge, Debtor reversed its position and asserted that the Revenue Multiplier was removed with the express consent of SKMDV. SKMDV quickly retained new counsel to protect its interests via the APA and, eventually, secured a $25 million payment from the purchaser in lieu of the expected $42.5 million.

22. While the TWA Pilots' Case was pending, in 2011, SKMDV filed a legal malpractice action against Debtor in the St. Louis County, Missouri Circuit Court, captioned "*SKMDV Holdings, Inc. v. Green Jacobson, P.C.,*" case number 11SL-CC02664. ("Malpractice Action"), seeking more than $40 Million in damages. The trial was scheduled for early November of 2014.

23. The alleged damages far exceeded the amount of Debtor's $5,000,000 professional liability policy, with coverage being reduced dollar for dollar for the expense and cost of defending the case.

24. After being served with the Malpractice Action, Debtor again changed course and contended that there was a mistake in the APA, that SKMDV possessed a 100% guaranteed reformation case against the purchaser, and that SKMDV was barred from recovering from Debtor due to its settlement with the purchaser.

25. During the course of the Malpractice Action, Debtor had limited liquid assets and insufficient capital and reserves to pay all of its ongoing operations. To compensate for these

limitations, Martin Green had to loan money to the Debtor and defer, from time to time, his salary or draw. Likewise, Debbie Mann, the office manager, advised the shareholders that they would not be getting their paychecks on time.

26. On May 29, 2014, the New Jersey District Court entered its Final Order and Judgment approving a settlement of the TWA Pilots' Case, a true copy of which is attached hereto as "Exhibit 1" and incorporated herein.

27. Said settlement included a $53 Million payment to the plaintiff class.

28. The May 29, 2014 Final Order and Judgment included the following award of attorneys' fees:

> **Attorneys' Fees and Costs** – Class Counsel are hereby awarded attorneys' fees in the sum of $15,543,128.64, such sum being equal to 30% of the Net Settlement Fund after deduction of Class Counsel's litigation expenses. The Court finds this fee to be fair and reasonable, after consideration of all the circumstances. In addition, the Court awards Class Counsel the sum of $1,189,571.22 for reimbursement of litigation expenses.

29. In an Order entered on September 9, 2014, the New Jersey District Court in the TWA Pilots' Case approved an interim distribution of settlement authorizing distributions from the settlement fund to various class members and others. The Order stated in part that "$7,771,564.32 shall be paid to Class Counsel, representing 50% of counsel's total fee award." A true copy of the Court's September 9, 2014 Order is attached hereto as "Exhibit 2."

30. On or about September 11, 2014, Debtor received a partial payment of Class Counsel attorneys' fees in the amount of $3,885,782.16. The $3,885,782.16 payment to Debtor was exactly one-half (1/2) of the total interim award set forth in the Court's September 9, 2014 Order.

1659522-1                                    5

31. All of the aforesaid $3,885,782.16 in attorneys' fees was deposited on September 11, 2014 into Debtor's checking account maintained at Enterprise Bank & Trust in St. Louis, Missouri.

32. At the time of receipt of the $3,885,782.16 payment on September 11, 2014, Debtor was set to go to trial in less than two (2) months in the Malpractice Action.

33. Since at least January 1, 2012, Defendant had actual knowledge of the filing and pendency of the Malpractice Action.

34. SKMDV claimed more than $40 Million in damages in the Malpractice Action.

35. Prior to trial of the Malpractice Action, SKMDV had made settlement demands to Debtor that were at least three-times higher than Debtor's malpractice insurance liability coverage.

36. Prior to Debtor's receipt of the approximate $3.8 Million in the TWA Pilots' Action, Debtor's motion for summary judgment, motion for judgment on the pleadings and motion for continuance of the trial setting had all been denied in the Malpractice Action.

37. On September 11, 2014, immediately before Debtor's receipt of the approximate $3.8 Million attorneys' fee payment, Debtor had approximately $402,000.00 in its operating bank account at Enterprise Bank & Trust.

38. By letters dated October 10, 2012, February 10, 2014, and September 22, 2014, SKMDV had notified Debtor's counsel that Debtor should preserve assets to satisfy any judgment that SKMDV obtained against Debtor.

39. By letter dated September 22, 2014, SKMDV specifically advised Debtor that before making any distribution of the TWA Pilots' Action fee award, that Debtor must make appropriate reserves for the Malpractice Action lawsuit. A true copy of the September 22, 2014 letter is attached hereto as "Exhibit 3" and incorporated herein.

1659522-1                                6

40. As an officer, employee, stockholder and director of Debtor, Defendant had actual or constructive knowledge of one or more of the aforesaid letters from plaintiff's counsel in the Malpractice Action.

41. While the Malpractice Action against Debtor was set for trial in less than two (2) months, and instead of preserving assets in light of the significant pending Malpractice Action, Debtor proceeded to make so-called "bonus payroll" payments to various attorneys and other employees then working for Debtor within days of receiving the $3,885,782.16 partial class action fee payment on September 11, 2014. The payment amounts made to the employees of Debtor in September, 2014 totaling approximately $3.78 Million (before deduction for tax or other withholdings) were on information and belief as follows:

| EMPLOYEE | AMOUNT |
|---|---|
| Martin M. Green | $ 1,053,824.75 |
| Joe D. Jacobson | 750,000.00 |
| Allen P. Press | 750,000.00 |
| Jonathan F. Andres | 750,000.00 |
| Deborah Mann | 400,000.00 |
| Jocelyn Mann-Boehlje | 10,000.00 |
| Cary Press | 10,000.00 |
| Eugenea Tyrone | 10,000.00 |
| Matthew B. Vianello | 50,000.00 |
| Total | $ 3,783,824.75 |

42. The Malpractice Action against Debtor was tried to conclusion in St. Louis County, Missouri Circuit Court. On November 12, 2014, a jury found Debtor liable for legal malpractice and awarded SKMDV Ten Million, Five Hundred Thousand Dollars ($10,500,000.00) in damages. (the "Malpractice Judgment").

1659522-1                                                    7

43. At the time of entry of the Malpractice Judgment, Trustee is informed and believes that Debtor and defendant, between them, had less than $2.6 Million in malpractice insurance available to pay the Malpractice Judgment.

44. At the time of entry of the Malpractice Judgment, Debtor had less than $415,000.00 in its firm commercial checking account at Enterprise Bank.

45. SKMDV commenced garnishment and other proceedings directed to Debtor's assets in an attempt to collect on its judgment against Debtor.

46. In an effort to avoid garnishment of Debtor's bank account at Enterprise Bank, Debtor moved $200,000.00 from its Enterprise Bank commercial checking account to a newly-opened bank account at a new bank in a different county on or about November 21, 2014.

47. As a result of the aforesaid transfer of funds to a new bank account, SKMDV was only able to garnish $5,570.72 left in Debtor's original Enterprise Bank commercial bank account in December, 2014 or January, 2015.

48. SKMDV served certain written interrogatories and requests for production upon Debtor in the state court case in an effort to discover information regarding Debtor's financial affairs and assets, including information concerning Debtor's books and records and banking records. On January 8, 2015, Debtor served its responses and objections to the discovery, many of which involved Debtor invoking the "privilege against self-incrimination as secured by the Fifth Amendment to the United States Constitution and by Article I, Section 19 of the Missouri Constitution."

49. All or most of Debtor's aforesaid refusals to answer or respond based upon its supposed constitutional privilege against self-incrimination were not supported by law since it is well recognized that the privilege does not apply to corporations. *State ex rel. Falone v. Levitt*, 572 S.W.2d 252, 254 (Mo.App. 1978). As experienced legal counsel, and particularly counsel

1659522-1                                        8

working for a law firm primarily engaged in litigation, Debtor and each of its attorneys knew or should have known that a corporate entity does not have the right to invoke the privilege against self-incrimination. Debtor's aforesaid improper invocation of the privilege against self-incrimination was done to hinder or delay the search of its assets and property.

50. Debtor had cash flow problems in 2014 as manifested by Martin Green and other principals refraining from taking their paychecks on a timely basis and by Martin Green having to loan Debtor $80,000.00 to pay Debtor's bills. Debtor did not have sufficient funds and liquidity to make its ordinary payments and bills commensurate with the size of its law practice. Debtor further admitted its cash flow problems and acknowledged it had modest net worth even before accounting for the Malpractice Action.

51. At or shortly after the time Debtor disbursed the so-called "bonus payments" in September, 2014, Debtor was or became insolvent, as its debts and obligations exceeded its assets, it could not timely pay its bills, and it did not have sufficient reserves or funds to operate as a going concern law firm.

52. As a result of the Malpractice Judgment, Debtor ceased operating as an on-going law firm by December 31, 2014 and all of its attorneys left Debtor's employment. Debtors' four shareholders (namely Martin M. Green, Joe D. Jacobson, Allen P. Press, and Defendant) all became employed by other law firms in the St. Louis, Missouri area.

53. Martin M. Green ("Green") incorporated a new professional corporation on January 7, 2015, known as the "Law Offices of Martin M. Green, P.C." (hereinafter referred to as the "Green Law Firm"). From such date to the present time, Green is and has been the President of the Green Law Firm and has continued to practice law as an employee of his Firm. On information and belief, Green is the sole shareholder of the Green Law Firm and controls the business activities of his Firm.

1659522-1                                                  9

54. Defendant incorporated a new professional corporation on January 23, 2015, known as the "Jonathan F. Andres, P.C." (hereinafter referred to as the "Andres Law Firm). From such date to the present time, Defendant is and has been the President of the Andres Law Firm and has continued to practice law as an employee of his Firm. On information and belief, Defendant is the sole shareholder of the Andres Law Firm and controls the business activities of his Firm.

55. In January, 2015, the new Green Law Firm and the new Andres Law Firm began operating at 7733 Forsyth Boulevard, Clayton, Missouri (Suite 700) (hereafter the "Premises"), which was the same Premises previously occupied by Debtor. Green and Defendant have continued to work out of these same Premises in their employment with their respective new Firms.

56. On or about January 22, 2015, Debtor paid its landlord $134,225.94 to prepay, in full, the anticipated rent, operating expenses and property taxes for the Premises for the period of February 1, 2015 through the end of the Lease term on July 31, 2015 (hereafter the "Rent Payment").

57. From and after January 1, 2015, however, Debtor was no longer providing services to its clients, did not conduct business from the Premises, did not own most of the personal property in the Premises, and derived only nominal benefit, if any, from the Premises.

58. The Green Law Firm, Andres Law Firm, Green, and Defendant were the ultimate recipients of the benefit of the Rent Payment, and each benefitted from the Rent Payment, including by not having to pay the landlord for their use, occupancy and rental of the Premises since January, 2015.

59. Green and Defendant knew and intended for the Rent Payment to benefit them personally (and benefit their respective professional corporations they previously had

incorporated) by having the rent for the Premises paid in full after Debtor ceased operating as an on-going law firm and had no need for the Premises.

60. As officers, directors and/or stockholders of Debtor, Green and Defendant owed fiduciary duties to Debtor and to Debtor's creditors. Such fiduciary duties include, but are not limited to, acting to protect the Debtor's and its creditors' interests, acting in the best interest of Debtor and its creditors, providing the utmost good faith and loyalty to Debtor and its creditors, and not engaging in self-serving dispositions of Debtor's assets for personal benefit.

61. Green and Defendant breached their fiduciary duties, in part, by authorizing, allowing and accepting the Rent Payment for their personal benefit, and which transaction provided no benefit to Debtor or its creditors and further diluted and reduced the remaining assets of Debtor.

62. In light of the foregoing allegations concerning the actions of Debtor and its shareholders, including Defendant, before, during and after the Malpractice Action, Trustee intends to file a motion, contemporaneously herewith, seeking injunctive relief as well as turnover of funds, documents and information, in an attempt to maintain the status quo with respect to the disputed transfers.

## COUNT I

### AVOIDANCE OF FRAUDULENT CONVEYANCE UNDER § 428.024.1(1) RSMo. and 11 U.S.C. § 544

63. Paragraphs 1 through 62 above are fully restated and incorporated herein.

64. Defendant received the aforesaid payment from Debtor in the amount of $750,000.00 (before deductions for taxes or other withholdings) shortly after September 11, 2014 (the "Andres Transfer").

65.     At all times since at least August 1, 2011, Andres was an officer, director and stockholder of Debtor, and Defendant had knowledge of Debtor's assets, liabilities and claims, including the Malpractice Action.

66.     At the time the Andres Transfer was made to Defendant, Debtor made the transfer under one, several or all of the following circumstances:

    A.     Debtor made the Andres Transfer to an insider, Defendant, who was an officer, director and stockholder of Debtor.

    B.     Debtor concealed the Andres Transfer.

    C.     Before the Andres Transfer was made, Debtor had already been sued in the Malpractice Action and was facing a trial in that action within two months after the Andres Transfer was made without sufficient malpractice insurance coverage.

    D.     In transferring the vast majority of the attorneys' fee payment received in the TWA Pilots' Action within days of receipt in September, 2014, including the Andres Transfer, Debtor transferred a substantial portion of Debtor's assets, and especially those assets that had liquidity.

    E.     The Debtor concealed assets and hindered and delayed disclosure of its assets and transfers, and collection of the Malpractice Judgment, through various acts and omissions, including but not limited to, improperly invoking a non-existent privilege against self-incrimination in judicial proceedings initiated by Debtor's major creditor seeking to discover Debtor's property, issuing the Rent Payment to its landlord, and by Debtor's failure to list approximately $3.8 Million of attorneys' fees due and owing to Debtor from the TWA Pilots' Case in Debtor's bankruptcy schedules.

    F.     Debtor was insolvent or became insolvent shortly after the Andres Transfer was made.

G. The Andres Transfer in September, 2014, was made shortly before a substantial, pre-existing claim was liquidated, namely the Malpractice Action Judgment entered against Debtor in November, 2014 in the amount of $10,500,000.

67. As set forth above, many of the badges of fraud set forth in Section 428.024.1 RSMo are present in this matter.

68. Debtor made the Andres Transfer to Defendant with the actual intent to hinder, delay or defraud Debtor's creditors in violation of Section 428.024.1(1) Mo.Rev.Stat.

WHEREFORE, Plaintiff prays for entry of judgment in favor of Plaintiff and against Defendant Jonathan F. Andres avoiding and setting aside the Andres Transfer as fraudulent pursuant to Section 428.024.1(1) Mo.Rev.Stat., and for such other and further relief as the Court deems just in the premises.

## COUNT II

### AVOIDANCE OF FRAUDULENT CONVEYANCE UNDER § 428.024.1(2) RSMo. and 11 U.S.C. § 544

69. Paragraphs 1 through 62 above are fully restated and incorporated herein.

70. Defendant received the aforesaid payment from Debtor in the amount of $750,000.00 (before deductions for taxes or other withholdings) shortly after September 11, 2014 (the "Andres Transfer").

71. At all times since at least August 1, 2011, Defendant was an officer, director and stockholder of Debtor, and Defendant had knowledge of Debtor's assets, liabilities and claims, including the Malpractice Action.

72. Debtor did not receive reasonably equivalent value in exchange for the Andres Transfer.

73. Debtor intended to incur or believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

74. By reason of the foregoing, the Andres Transfer by Debtor was a fraudulent conveyance pursuant to § 428.024.1(2) Mo.Rev.Stat.

WHEREFORE, Plaintiff prays for entry of judgment in favor of Plaintiff and against Defendant Jonathan F. Andres avoiding and setting aside the Andres Transfer as fraudulent pursuant to Section 428.024.1(2) Mo.Rev.Stat., and for such other and further relief as the Court deems just in the premises.

## COUNT III

### AVOIDANCE OF FRAUDULENT CONVEYANCE UNDER § 428.029.2 RSMo. and 11 U.S.C. § 544

75. Paragraphs 1 through 62 above are fully restated and incorporated herein.

76. Defendant received the aforesaid payment from Debtor in the amount of $750,000.00 (before deductions for taxes or other withholding) shortly after September 11, 2014 (the "Andres Transfer").

77. At all times since at least August 1, 2011, Defendant was an officer, director and stockholder of Debtor, and Defendant had knowledge of Debtor's assets, liabilities and claims, including the Malpractice Action.

78. The Malpractice Action claim arose before the Andres Transfer.

79. Defendant was an insider at the time of the Andres Transfer.

80. Debtor was insolvent at the time the Andres Transfer was made, and Defendant had reasonable cause at that time to believe that the Debtor was insolvent.

81. By reason of the foregoing, the Andres Transfer by Debtor was a fraudulent conveyance pursuant to § 428.029.2 Mo.Rev.Stat.

1659522-1                                14

WHEREFORE, Plaintiff prays for entry of judgment in favor of Plaintiff and against Defendant Jonathan F. Andres avoiding and setting aside the Andres Transfer as fraudulent pursuant to Section 428.029.2 Mo.Rev.Stat., and for such other and further relief as the Court deems just in the premises.

## COUNT IV

### AVOIDANCE OF FRAUDULENT CONVEYANCE UNDER 11 U.S.C. § 548(a)(1)(A)

82. Paragraphs 1 through 62 and paragraph 66 above are fully restated and incorporated herein.

83. Defendant received the aforesaid payment from Debtor in the amount of $750,000.00 (before deductions for taxes or other withholdings) shortly after September 11, 2014 (the "Andres Transfer").

84. At all times since at least August 1, 2011, Defendant was an officer, director and stockholder of Debtor, and Defendant had knowledge of Debtor's assets, liabilities and claims, including the Malpractice Action.

85. At all times mentioned in this Complaint, Defendant was an employee of Debtor.

86. The Andres Transfer was made less than one year before the Petition Date.

87. Debtor made the Andres Transfer to Defendant with the actual intent to hinder, delay or defraud Debtor's creditors in violation of 11 U.S.C. § 548(a)(1)(A).

WHEREFORE, Plaintiff prays for entry of judgment in favor of Plaintiff and against Defendant Jonathan F. Andres avoiding and setting aside the Andres Transfer as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(A), and for such other and further relief as the Court deems just in the premises.

## COUNT V

### AVOIDANCE OF FRAUDULENT CONVEYANCE UNDER
### 11 U.S.C. § 548(a)(1)(B)

88. Paragraphs 1 through 62 above are fully restated and incorporated herein.

89. Defendant received the aforesaid payment from Debtor in the amount of $750,000.00 (before deductions for taxes or other withholdings) shortly after September 11, 2014 (the "Andres Transfer").

90. At all times since at least August 1, 2011, Defendant was an officer, director, employee and stockholder of Debtor, and Defendant had knowledge of Debtor's assets, liabilities and claims, including the Malpractice Action.

91. At the time of the Andres Transfer, Debtor was insolvent or became insolvent as a result thereof.

92. The Andres Transfer was made less than one year before the Petition Date.

93. Debtor received no value or less than a reasonably equivalent value in exchange for the Andres Transfer.

94. Additionally or alternatively, in light of the pending Malpractice Action, Debtor was about to engage in business or a transaction for which the property remaining with Debtor was an unreasonably small capital.

95. Additionally or alternatively, Debtor made the Andres Transfer to Defendant, an insider, for Defendant's benefit under an employment contract and not in the ordinary course of business.

96. By reason of the foregoing, the Andres Transfer should be avoided as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

WHEREFORE, Plaintiff prays for entry of judgment in favor of Plaintiff and against Defendant Jonathan F. Andres avoiding and setting aside the Andres Transfer as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B), and for such other and further relief as the Court deems just in the premises.

## COUNT VI

### AVOIDANCE OF PREFERENTIAL TRANSFER UNDER 11 U.S.C. § 547

97. Paragraphs 1 through 62 above are fully restated and incorporated herein.

98. Defendant Jonathan F. Andres received the aforesaid payment from Debtor in the amount of $750,000.00 (before deductions for taxes or other withholdings) shortly after September 11, 2014 (the "Andres Transfer").

99. At all times since at least August 1, 2011, Defendant was an officer, director, employee and stockholder of Debtor, and Defendant had knowledge of Debtor's assets, liabilities and claims, including the Malpractice Action.

100. At the time of the Andres Transfer, Defendant was an "insider" of Debtor pursuant to 11 U.S.C. § 547 and 11 U.S.C. § 101(31)(B).

101. At the time of the Andres Transfer, Debtor was insolvent.

102. The Andres Transfer was made by Debtor to or for the benefit of a creditor (Andres) for or on account of an antecedent debt.

103. The Andres Transfer was made less than one year before the Petition Date.

104. Defendant received more on account of the Andres Transfer than he would receive from a hypothetical liquidation of Debtor's assets under Chapter 7 of the Bankruptcy Code.

105. By reason of the foregoing, the Andres Transfer should be avoided as a preferential transfer pursuant to 11 U.S.C. § 547.

WHEREFORE, Plaintiff prays for entry of judgment in favor of Plaintiff and against Defendant Jonathan F. Andres avoiding and setting aside the Andres Transfer as preferential transfer pursuant to 11 U.S.C. § 547, and for such other and further relief as the Court deems just in the premises.

## COUNT VII

### RECOVERY OF AVOIDED TRANSFER PURSUANT TO 11 U.S.C. § 550

106. Paragraphs 1 through 105 above are fully restated and incorporated herein.

107. Defendant was the initial transferee of the Andres Transfer.

108. As set forth above, the Andres Transfer is avoidable pursuant to §§ 428.024.1(1), 428.024.1(2) and/or 428.029.2 Mo.Rev.Stat., and/or 11 U.S.C. §§ 548 and/or 547.

109. Accordingly, pursuant to 11 U.S.C. § 550, Plaintiff, as Trustee of Debtor's bankruptcy estate, is entitled to recover the $750,000.00 Andres Transfer from Defendant.

WHEREFORE, Plaintiff prays for entry of judgment in favor of Plaintiff and against Defendant Jonathan F. Andres in the amount of $750,000.00 pursuant to 11 U.S.C. § 550, for Plaintiff's costs incurred herein, and for such other and further relief as the Court deems just in the premises.

Respectfully Submitted,
SUMMERS COMPTON WELLS LLC

Date:  August 12, 2015

By: /s/  Jill R. Rembusch
JILL R. REMBUSCH  #46251MO
DANIEL J. WELSH  #49765MO
STEPHEN C. HIOTIS  #30840MO
BRIAN J. LAFLAMME  #49776MO
8909 Ladue Road
St. Louis, Missouri  63124
(314)991-4999
(314)991-2413/FAX
Attorneys for Plaintiff

1659522-1                                       18