**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | Case No. 15-41404-705 |
| ) | Honorable Charles E. Rendlen, III |
| GREEN JACOBSON, P.C., ) | Chapter 7 |
| ) | |
| Debtor. ) | Hearing Date: November 9, 2016 |
| ) | Hearing Time: 10:00 a.m. |

**MOTION TO COMPROMISE CONTROVERSY**

COMES NOW David A. Sosne ("Trustee"), duly appointed and qualified Chapter 7 Trustee for the bankruptcy estate of Green Jacobson, P.C. (the "Debtor"), by and through his undersigned counsel, and for his Motion to Compromise Controversy (the "Motion"), respectfully states to this Honorable Court as follows:

1. On or about March 3, 2015 (the "Petition Date"), an involuntary petition under Chapter 7 of the United States Bankruptcy Code was filed against Debtor in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court").

2. The Order for Relief was entered in this case on April 16, 2015, and Trustee was appointed as the Chapter 7 Trustee of Debtor's bankruptcy estate contemporaneously therewith.

3. The court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local District Rule 9.01(B)(1). This matter is a core proceeding within the meaning of 28 U.S.C.§ 157(A), (E), (F), (H) and (O).

4. Venue of this proceeding in this District is proper under 28 U.S.C. §§1408 and 1409.

5. For at least the five years prior the Petition Date, Jonathan Andres ("Andres") was a shareholder, officer, director and employee of Debtor. Andres retained those positions through at least the end of December, 2014. During most or all of his employment with Debtor, Andres

was a litigation attorney actively involved in litigation and appellate work on behalf of his and Debtor's clients.

6. On November 12, 2014, Debtor was found liable for legal malpractice in a suit brought in St. Louis County Circuit Court, "*SKMDV Holdings, Inc. v. Green Jacobson, P.C.*," case number 11SL-CC02664. ("Malpractice Action"). The Judgment against Debtor was in the amount of Ten Million, Five Hundred Thousand Dollars ($10,500,000.00). As a result of the this Judgment, Debtor essentially ceased operating as a going concern law firm by December 31, 2014, and its attorneys (including Andres) thereafter commenced work at other law firms in the area. In fact, Andres left his employment with Debtor and formed a new professional corporation on January 23, 2015, known as "Jonathan F. Andres, P.C." ("JFA"). From such date to the present time, Andres is and has been the President of JFA and has continued to practice law as an employee of the firm. Andres is the sole shareholder of JFA and controls the business activities of the firm.

7. On or about August 12, 2015, the Trustee commenced an adversary proceeding in this Court against Andres to recover certain avoidable transfers made by Debtor to Andres and/or Laura Frame[1] in September of 2014 (collectively, the "Adversary Claims").[2] In summary, the Trustee alleged that during September, 2014, within a year of the Petition Date, and approximately two months before the aforesaid malpractice judgment, and while Debtor was insolvent, Debtor transferred $750,000.00 to Andres (the "Transfer"), of which approximately $500,000.00 (the $750,000.00 less withholding) was deposited into one or more accounts held by or titled in the name of Andres and/or Laura Frame. Trustee further alleged that the Transfer is

---

[1] Ms. Frame is the spouse of Andres.
[2] Initially, Andres was the sole defendant in the suit, but Frame was added pursuant to an Amended Complaint on December 28, 2015.

1819156-1                                                    2

avoidable pursuant to Chapter 5 of the Bankruptcy Code and the Missouri Uniform Fraudulent Transfer Act. Andres and Frame deny the Adversary Claims and have asserted defenses.

8. Though presently not the subject of a pending suit, the Trustee also asserts an interest in certain attorneys' fees and expense reimbursements originating from clients previously represented by the Debtor. Several of Debtor's pre-Petition clients decided to transfer the handling of their pending litigation and arbitration matters to Andres and JFA. Many of the litigation and/or arbitration matters that were transferred (collectively, the "Andres Cases") involved litigation or arbitration matters in which Debtor previously had agreements to receive contingency fees (a percentage of the amounts awarded or obtained) or involved pending class action cases in which Debtor and its attorneys would be awarded attorneys' fees (and unreimbursed costs advanced) by a court after the successful prosecution or settlement of the class action case. Debtor and its attorneys and staff (including Andres) contributed time and effort to the Andres Cases before the Petition Date.

9. Trustee has asserted that some portion of the fees and any reimbursements resulting from or attributable to the Andres Cases are property of Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541. Andres and JFA have disputed the extent of the Trustee's interest in the Andres Cases.

10. To avoid the time, cost, and risk associated with litigation, the Trustee, JFA, Andres and Frame engaged in good faith, arm's-length settlement negotiations and agreed to settle the Adversary Claims and the estate's interest in the Andres Cases. The negotiations were extensive, time-consuming, and addressed a multitude of complex issues.

11. The terms of the settlement are set forth in the Settlement Agreement by and between the Trustee, Andres, JFA and Frame. A copy of the Settlement Agreement is attached hereto as Exhibit "A". The terms of the settlement are incorporated herein by reference.

1819156-1                                      3

12. By and through this Motion, Trustee requests that the Court approve the Settlement Agreement and expressly retain jurisdiction to enforce its Order approving the Settlement Agreement and the terms and obligations set forth in the Settlement Agreement.

13. Bankruptcy Rule 9019 provides that, after notice and hearing, a court may approve a proposed settlement or compromise. The decision whether to accept or reject a compromise lies within the sound discretion of the court. See In re Apex Oil Co., 92 B.R. 847, 866 (E.D. Mo. 1988). In the Eighth Circuit, the four criteria generally relevant in determining whether to approve a settlement include:

(a) the probability of success in the litigation;

(b) the likely difficulties, if any, to be encountered in the matter of collection;

(c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

(d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

See Apex Oil, 92 B.R. at 867 (citing Drexel v. Loomis, 35 F.2d 800, 806 (8th Cir.1992)). To approve a settlement under Bankruptcy Rule 9019, the Court need only determine that the proposed settlement meets the lowest level of reasonableness. See In re New Concept Housing, Inc., 951 F.2d 932, 938 (8th Cir. 1991) (internal citation omitted). In making its determination, a court should not substitute its own judgment for that of the Trustee. Apex Oil, 92 B.R. at 867.

14. The Settlement Agreement provides for the division of recoveries received on any and all Andres Cases[3] and contains provisions and procedures concerning the distribution of such funds and the Parties relative rights and obligations with respect to the funds. The specific fee allocations are detailed or referenced in the Settlement Agreement.

---

[3] A list of all such contingency fee and class action cases are set forth in Exhibit 3 to the Settlement Agreement.

1819156-1                                    4

(a) The allocation of awarded attorneys' fees and expenses between Debtor's estate and Andres and/or JFA could become quite involved, complex, and result in considerable delay and expenses to the estate. For example, in contingent fee cases, decisions have held that the former counsel's fees (Debtor in this case) should be based upon the reasonable value of its services on a quantum meruit. See Welman v. Parker, 328 S.W.3d 451, 455-456 (Mo.App. 2010).[4]

(b) Trustee maintains that such an allocation involves much more than simply computing the amount of hours of services provided before the Petition Date multiplied by Debtor's billing rates, and can involve consideration of the value that Debtor's services contributed to the eventual outcome and the risk incurred.

(c) The litigation of the allocation of attorneys' fees between Debtor and the new counsel in these cases could be quite involved, could be protracted and expensive. The Settlement Agreement resolves any allocation disputes, and at less expense to the estate than if the disputes were litigated in the courts.

15. The Settlement Agreement also addresses many other issues that further the interests of the bankruptcy estate, including but not limited to the following:

(a) It requires Andres and Frame to pay a total of $325,000.00[5] plus interest over a period of approximately two years, thereby resolving the pending adversary proceeding referenced hereinabove and all Adversary Claims;

(b) It imposes certain restrictions on Andres and Frame regarding transferring or encumbering their personal assets; and

---

[4] The Trustee reserves the right to assert that there are other methods or formula for computing the Debtor's share of contingency fee or class action awards of attorneys' fees.
[5] If paid within 90 days of the entry of an Order approving the Settlement Agreement, the amount shall be discounted to $315,000.00.

1819156-1      5

(c) It grants the estate a security interest in real property owned by Andres and Frame and contains default provisions to protect and ensure the Trustee's ability to collect the settlement funds.

17. The Trustee and his counsel engaged in extensive and lengthy negotiations with Andres, JFA and Frame to finalize and memorialize the settlement terms set forth in the Settlement Agreement. The Trustee has done extensive due diligence in reviewing the assets and claimed assets of the bankruptcy estate, including the Adversary Claims and the estate's interest in the Andres Cases, the complexity of the factual and legal issues involved, the likely time and expense of litigation with Andres, Frame and JFA, and the fact that there is never a one hundred percent guaranty of success in any litigated matter. After engaging in that analysis, it is the Trustee's business judgment that the Settlement Agreement is in the best interests of the estate.

18. As stated above, the Settlement Agreement was negotiated at arm's-length by the parties, meets the standards stated above because it is a fair and reasonable compromise between the parties and prevents expensive litigation between the parties and, as a result, is in the best interests of the estate and represents a fair and reasonable settlement for all parties.

19. The Trustee further requests that this Court authorize the co-responsible parties of the Debtor to prepare and file corrected Forms W-2 and any other related tax documents for 2014, as might be necessary and as allowed by law, to reflect any reductions in income to Andres that may result from the Settlement Agreement and the payment of the Settlement Amount. Related thereto, the Settlement Agreement provides that (i) neither the Trustee nor the Debtor's bankruptcy estate shall be responsible for any costs associated with such amendments or corrections and (ii) Andres shall promptly provide the Trustee with a copy of any corrected Form W-2 and/or other related tax documents filed by Debtor or on its behalf.

20.     Finally, the Settlement Agreement includes a compromise of state law fraudulent conveyance claims under the Missouri Uniform Fraudulent Transfer Act (the "UFTA"). All known creditors of the Debtor and other parties in interest are receiving notice of this Motion and the settlement described herein. The Trustee requests that the Order of this Court granting this Motion and approving the Settlement Agreement declare that the compromise of the UFTA claims between the Trustee and Andres and Frame is binding on all noticed creditors and other parties in interests, and that such creditors and other parties in interest shall be prohibited from pursuing any such UFTA or Chapter 5 claims against Andres and Frame in the future.

WHEREFORE, the Trustee prays that this Honorable Court make and enter its Order (i) granting this Motion to Compromise Controversy; (ii) approving the Settlement Agreement; (iii) authorizing the Trustee to complete the terms of the Settlement Agreement; (iv) authorizing the co-responsible parties of the Debtor to prepare and file corrected Forms W-2 and any other related tax documents for 2014, as might be necessary and as allowed by law, to reflect any reductions in income to Andres that may result from the Settlement Agreement and the payment of the Settlement Amount; (v) providing that (a) neither the Trustee nor the Debtor's bankruptcy estate shall be responsible for any costs associated with such amendments or corrections and (b) Andres shall promptly provide the Trustee with a copy of any corrected Forms W-2 and/or other related tax documents filed by each of them or on their behalf; (vi) declaring that the compromise of the UFTA claims between the Trustee and Andres and Frame is binding on all noticed creditors and other parties in interests and that such creditors and other parties in interests shall be prohibited from pursuing any such UFTA claims and Chapter 5 claims against Andres and Frame in the future; and (vii) granting such additional relief as the Court deems just and proper.

                                             Respectfully Submitted,
                                             SUMMERS COMPTON WELLS LLC

Date:  October 12, 2016               By: /s/ Brian J. LaFlamme
                                             Brian J. LaFlamme, #49776MO
                                             Attorney for Trustee
                                             8909 Ladue Road
                                             St. Louis, MO 63124
                                             (314) 991-4999/(314) 991-2413 Fax
                                             trusteeatty@summerscomptonwells.com

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was served on October 12, 2016 via electronic filing in the CM/ECF system of the United States Bankruptcy Court for the Eastern District of Missouri to the parties requesting service by electronic filing.  I hereby also certify that a copy of the foregoing was served on October 12, 2016 via United States Mail, first class postage prepaid to those individuals and entities not requesting service by electronic filing.  The individuals and entities being served electronically or by mail are:

| | |
|---|---|
| United States Department of Justice<br>U.S. Trustee's Office<br>111 S. 10th Street, Ste. 6353<br>St. Louis, MO 63102 | Robert E. Eggmann<br>Desai Eggmann Mason LLC<br>7733 Forsyth Boulevard, Suite 800<br>Clayton, MO 63105 |
| Green Jacobson, P.C.<br>7733 Forsyth Blvd., Suite 700<br>Clayton, MO 63105 | Thomas H. Riske<br>Desai Eggmann Mason LLC<br>7733 Forsyth Blvd., Suite 800<br>Clayton, MO 63105 |
| SKMDV Holdings, Inc.<br>4235 Austin Ridge Drive<br>St. Charles, MO 63304 | Brian W. Hockett<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, MO 63101 |
| David A. Warfield<br>Thompson Coburn LLP<br>One US Bank Plaza<br>St. Louis, MO 63101 | Law Offices of Martin M. Green, P.C.<br>Attn: Deborah Mann<br>7733 Forsyth Blvd., Suite 700<br>Clayton, MO 63105 |
| Jacobson Press & Fields P.C.<br>Attn: Joe Jacobson<br>168 N. Meramec Ave., Suite 150<br>Clayton, MO 63105 | David P. Oetting, Class Representative<br>NationsBank Class<br>8 Glenview Road<br>St. Louis, MO 63124 |

1819156-1                                                                       8

| | |
|---|---|
| Michael Gross<br>Michael Gross Law Firm<br>231 South Bemiston Avenue<br>Suite 250<br>Clayton, MO 63105 | Andres Law Firm, P.C.<br>c/o Jonathan F. Andres<br>7733 Forsyth Blvd., Suite 700<br>Clayton, MO 63105 |
| Jonathan F. Andres<br>7733 Forsyth Blvd., Suite 700<br>Clayton, MO 63105 | Laura Frame<br>1127 Hoot Owl Road<br>St. Louis, MO 63005 |

Date:  October 12, 2016                             /s/ Marquita Monroe

1819156-1                                       9