## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between David A. Sosne, Chapter 7 Trustee for the bankruptcy estate of Green Jacobson, P.C. (the "Trustee"), Jonathan Andres ("Andres"), Laura Frame ("Frame") and Jonathan F. Andres, PC ("JFA") on this 3rd day of October, 2016.

## THE RECITALS

WHEREAS, an involuntary petition in bankruptcy was filed against Green Jacobson, P.C., a Missouri professional corporation ("Debtor") on March 3, 2015 (the "Petition Date") in the United States Bankruptcy Court, Eastern District of Missouri, Eastern Division (the "Bankruptcy Court"), Case Number 15-41404-705 (the "Bankruptcy Case"), which resulted in the creation of the resulting bankruptcy estate ("the Estate"); and

WHEREAS, on April 16, 2015, the Bankruptcy Court entered its order granting relief under Chapter 7 of the United States Bankruptcy Code in Debtor's bankruptcy proceeding, and Trustee was appointed as the Chapter 7 trustee of Debtor's case contemporaneously therewith; and

WHEREAS, at all times relevant hereto Andres was a shareholder of Debtor; and

WHEREAS, Debtor operated a law office located at 7733 Forsyth Boulevard, Suite 700, Clayton, MO, 63105 (the "Premises").

WHEREAS on July 1, 2011 SKMDV Holdings, Inc. ("SKMDV") filed a lawsuit against Debtor alleging that Debtor committed professional negligence. The case is styled as *SKMDV Holdings, Inc. vs. Green Jacobson, P.C.* and assigned cause number Cause No. 11SL-CC02664 (the "SKMDV Case"); and

WHEREAS, in mid-September of 2014, Debtor received a fee in the amount of $3,885,782.16 (the "Preliminary TWA Fee") in connection with its work as counsel for class Plaintiffs in a class action case pending in the United States District Court, District of New Jersey styled *Patrick Brady, et al. v. Air Line Pilots Association, International*, Case No. 1:02-cv-02917 (JEI) (the "TWA Case"); and

WHEREAS, shortly after Debtor received the Preliminary TWA Fee, Debtor paid the sums of $750,000 to Andres (the "Transfer"); and

WHEREAS, at the time of the Transfer the SKMDV Case was set for trial on November 5, 2014; and

WHEREAS, on November 12, 2014 a Judgment was entered in the SKMDV Case in favor of SKMDV and against Debtor in the amount of $10,500,000 (the "SKMDV Judgment"); and



WHEREAS, Debtor ceased active operations on December 31, 2014; and

WHEREAS, on January 7, 2015 the SKMDV Judgment was appealed to the Missouri Court of Appeals, Eastern District (the "Court of Appeals") and was assigned Appeal Number ED102493 (the "Appeal"); and

WHEREAS, on or about January 22, 2015 Debtor paid the sum of $134,225.94 to Debtor's landlord for the Premises in an effort to "pre pay" anticipated rent, operating expenses and property taxes for the Premises through July 31, 2015 (hereinafter the "Rent Transfer"); and

WHEREAS, Andres formed JFA, a new law firm, on January 23, 2015; and

WHEREAS, JFA and Andres have occupied the Premises at all times relevant hereto; and

WHEREAS, the Trustee has claimed that the Rent Transfer is avoidable under one or more provisions of Chapter 5 of the United States Bankruptcy Code and/or Missouri's Uniform Fraudulent Transfer Act and that Andres and JFA (along with other entities) are otherwise obligated to reimburse the Estate for their occupancy of the Premises (the "Rent Claims"); and

WHEREAS, the Rent Claims have been asserted against Andres and JFA (along with other Defendants) in an adversary complaint filed by the Trustee in Bankruptcy Court styled *David A. Sosne, in his capacity as Chapter 7 Trustee for Green Jacobson, P.C. v. Martin M. Green, et. al.*, and assigned Case No. 15-04160-705 (the "Rent Lawsuit"); and

WHEREAS, the Trustee has claimed that the Transfer is avoidable under one or more provisions of Chapter 5 of the United States Bankruptcy Code and/or Missouri's Uniform Fraudulent Transfer Act (the "Andres-Frame Claims") and has also claimed that the other shareholders of Debtor have also received transfers that are avoidable under one or more provisions of Chapter 5 of the United States Bankruptcy Code and/or Missouri's Uniform Fraudulent Transfer Act (hereinafter collectively referred to as the "Claims"); and

WHEREAS, the Andres-Frame Claims have been asserted against Andres and Frame (sometimes hereinafter referred to collectively as "Andres/Frame") in an adversary complaint filed by the Trustee in Bankruptcy Court styled *David A. Sosne, in his capacity as Chapter 7 Trustee for Green Jacobson, P.C. v. Jonathan F. Andres, et. al.*, and assigned Case No. 15-04158-705 (the "Andres-Frame Lawsuit"); and

WHEREAS, Andres/Frame deny liability for the Andres-Frame Claims, and Andres and JFA deny liability for the Rent Claims; and

WHEREAS, the Trustee asserts an interest in various cases and matters that Debtor had been handling as counsel and which now are being or have been handled by JFA; and

WHEREAS, Andres and JFA dispute the extent of the interest claimed by the Trustee with regard to the cases and matters JFA is now handling or has handled on behalf of former clients of Debtor; and

1812369.1                                                      2

WHEREAS, on or about May 20, 2015, David Oetting filed a claim against the Estate in the amount of $10,503,914.70 assigned by the Clerk of the Court as Claim No. 1 (the "Oetting Claim"); and

WHEREAS, on or about August 27, 2015 and August 28, 2015 Andres/Frame delivered Personal Financial Statements (the "Personal Financial Statements") to the Trustee containing detailed information with respect to their current assets and liabilities; and

WHEREAS, Andres/Frame represent and warrant that the Personal Financial Statements remain true and accurate as of the date of this Agreement in all material respects; and

WHEREAS; the Trustee has relied upon and is relying upon the representations and warranties of Andres /Frame with respect to the Personal Financial Statements in entering into this Agreement; and

WHEREAS, on or about April 12, 2016 the SKMDV Judgment was affirmed, in part by the Missouri Court of Appeals.

WHEREAS, on or about June 23, 2016, Debtor filed an Application for Transfer to the Missouri Supreme Court; and

WHEREAS, on or about August 23, 2016 the Application for Transfer was denied. Accordingly, the SKMDV Case has become fully adjudicated, and all of the Debtor's appellate rights with respect to the SKMDV Judgment are fully exhausted; and

WHEREAS, to avoid the cost and risk associated with litigating the Andres-Frame Claims, the Rent Claims, and the respective the interests in the cases now being handled by JFA, the Trustee and Andres/Frame and JFA have engaged in good faith, arm's-length settlement negotiations and have agreed to settle the Andres-Frame Claims and certain other matters pursuant to the terms stated in this Agreement and have devised a process for resolving the Estate's interest in the cases being handled by JFA; and

WHEREAS, the Trustee has determined that this settlement (hereinafter the "Settlement") is in the best interests of the creditors and the Estate.

NOW, THEREFORE, in consideration of the following covenants, the Trustee, Andres/Frame and JFA (collectively the "Parties") hereby agree to settle the Andres-Frame Claims and other matters on the following terms and conditions, subject to approval by the Bankruptcy Court:

## COURT APPROVAL

1. The Settlement requires the approval of the Bankruptcy Court. In the event that the Bankruptcy Court does not approve the Settlement, the Settlement shall be null and void and the Agreement shall be of no effect. Within five (5) business days of the execution of the Agreement, a Motion to Approve the Settlement (the "Motion") will be filed in the Bankruptcy

Court. The Motion shall expressly provide that the Settlement is contingent upon Bankruptcy Court approval. The Parties acknowledge their consent and approval of the Motion. The Parties agree to provide full cooperation and best efforts in requesting that the Bankruptcy Court sustain the Motion and approve the Settlement and Agreement. In the event this Settlement and Agreement are not approved by the Bankruptcy Court, the Settlement and Agreement will be null and void, and the Trustee shall immediately return any payments received pursuant to the terms of this Agreement.

## SETTLEMENT PAYMENT

2.    Andres/Frame shall pay to the Trustee the amount of $325,000 in settlement of the Andres-Frame Claims (hereinafter the "Settlement Amount"). The Settlement Amount shall be made as follows:

   a.   Andres/Frame shall pay Ten Thousand Dollars and No Cents ($10,000) to the Trustee contemporaneously with the execution of this Agreement;

   b.   The remaining $315,000 of the Settlement Amount shall be accelerated and become due and payable when the last of following events have occurred:

      i)    The date the Oetting Claim becomes fully adjudicated; and

      ii)   Two (2) years has elapsed following the date the Bankruptcy Court approves the Settlement;

   Upon the occurrence of the last of the above events, the Trustee shall have the right and authority to send a notice to Andres/Frame (hereinafter the" Notice of Acceleration") providing Andres/Frame thirty (30) days to pay the remaining Settlement Amount to the Estate and directing Andres and Frame to sell the Primary Residence as defined in Paragraph 3 in the event the remaining balance of the Settlement Payment is not timely tendered. Andres and Frame agree to take immediate action to sell the Primary Residence in accordance with the Notice of Acceleration. The terms and conditions of sale shall be the same terms and conditions as set forth in Paragraphs 17(a) and 17(b) below, except that the Trustee will only be entitled to the sum of $315,000, plus any unpaid interest thereon, subject to the following: if there exist other Events of Default as set forth in Paragraph 16 and/or if Andres and Frame fail to cooperate as defined in Paragraph 17(c), the Trustee will be entitled to the full extent and amount of the remedies set forth in Paragraphs 16, 17 and 18. Notwithstanding the foregoing, the Trustee agrees to refrain from sending the Notice of Acceleration if he believes, in his sole discretion, that there are then ample funds in the Estate obtained from sources other than from Chapter 5 Funds as defined in Paragraph 9 to pay all allowed claims against the Estate with statutory interest. In addition, if prior to the receipt of the Settlement Amount, the Trustee believes there is a surplus of funds after payment of all administrative costs and expenses and

allowed claims, the Trustee agrees to abandon his claim to any portion of the Settlement Amount that has not yet been paid to the Estate.

c. Andres/Frame shall pay to the Trustee interest on the $315,000 balance to be accrued and payable at the rate of 2.5% per annum on a quarterly basis. The accrual of interest shall commence upon the date the Bankruptcy Court enters its Order approving the Settlement. The obligation to pay interest shall be joint and several. Quarterly interest payments shall be and paid to the Trustee on or before March 1, June 1, September 1 and December 1 of each calendar year (the "Due Dates"). The first installment payment shall be due on the first Due Date following the date of the Bankruptcy's Court approval of this Agreement. These interest payments shall be paid in addition to the obligation to pay the additional $315,000.

d. Upon receipt (and clearing) of the final payment of the Settlement Amount, the Trustee shall dismiss the Andres-Frame Lawsuit, with prejudice, and destroy the Consent Judgment referenced below. Notwithstanding any other provision to the contrary, upon timely payment of the Settlement Amount in full, and regardless of Andres' performance or non-performance of his obligations with respect to the Andres Cases as defined below, Frame shall be completely released from all obligations, claims and causes by the Estate or Trustee or others claiming through them.

3. As an alternative to the terms and conditions of Paragraph 2 above, Andres and Frame shall have the right to pay the Trustee the sum of $10,000.00 contemporaneously with the execution of this Agreement and the additional sum of $305,000 no later than 90 days after the Bankruptcy Court enters its Order approving the Settlement. Such payment shall be accepted by the Trustee as the Settlement Amount and will be held and disbursed in accordance with the terms of this Agreement.

4. The Settlement Amount shall be deposited and held by the Trustee in the trust account of Summers Compton Wells LLC or a segregated account of the Trustee consistent with the policies of the Office of the United States Trustee, pending approval of this Agreement by the Bankruptcy Court and satisfaction of all conditions precedent described hereinafter.

## REAL ESTATE SECURITY FOR SETTLEMENT AMOUNT

5. The Settlement Amount shall be incorporated into a Promissory Note (hereinafter the "Note") and secured by a Deed of Trust and Consent Judgment referenced herein signed by Andres/Frame in favor of the Estate that secure an interest in the primary residence of Andres and Laura Frame located at 1127 Hoot Owl Road, Wildwood, MO 63005 (hereinafter the "Primary Residence"). The Note shall be in the amount of $500,000 plus interest and fees, but payable in the lesser amounts set forth in Paragraph 2 above, provided there is no other Event of Default as later defined. The Note and Deed of Trust are attached hereto as **EXHIBIT 1, and EXHIBIT 2**. Andres/Laura Frame represent and warrant that there exists a first Deed of Trust on the Primary Residence in favor of Vantage Credit Union (hereinafter the "First Mortgage")

1812369.1                                  5

and that there are no other liens or encumbrances against the Primary Residence other than real property taxes that will be due for the current year. Andres and Laura Frame further represent and warrant that the outstanding balance on the First Mortgage as of August 1, 2016 is $74,998.43.

## PROHIBITIONS AGAINST FUTURE TRANSFERS

6.  Until Andres/Frame have paid the Settlement Amount in full, the following restrictions shall be in effect:

    a.  Andres/Frame shall not transfer any funds or make any transfer of any other assets in which they have an interest in excess of $15,000 per transfer without the express written consent of the Trustee, except that the Andres/Frame may make transfers between their own accounts, provided that the transfers are not paid to accounts that might be subject to any exemptions from collection;

    b.  Andres /Frame shall not encumber or refinance the Primary Residence unless the Trustee agrees that the encumbrance or refinance is required as collateral for a loan that Andres or Frame need and require to pay the Trustee. Andres/Frame may only encumber the aforementioned assets with the Trustee's written consent;

    c.  The aforementioned restrictions (hereinafter the "Transfer Restrictions") shall expire upon full payment of the Settlement Amount and written confirmation from the Trustee.

## APPLICATIONS TO THE ESTATE FOR LITIGATION FUNDING

7.  Andres may apply to the Estate for funding of certain litigation initiatives during the pendency of the Bankruptcy Case. The Trustee reserves full discretion to honor or reject any such request, in full or in part. Andres shall deliver any information that the Trustee determines to be required for the purposes of evaluating any such application.

## CONTINGENCY FEE AND CLASS ACTION CASES

8.  Andres, JFA and the Trustee recognize, acknowledge and agree that the Estate has an interest in fees and expenses that might be obtained, received or payable to Andres and/or JFA on cases in which the Debtor was counsel at the time Debtor ceased operations and in which Andres or JFA became counsel. Andres and JFA represent and warrant that a complete and accurate list of the cases at issue (hereinafter the "Andres Cases") is attached hereto as **[EXHIBIT 3]** and incorporated herein by this reference, and that EXHIBIT 3 also contains a true and accurate reflection of the fee split arrangements with any Plaintiff(s) and also contains a true and accurate reflection of the fee split arrangements with any Debtor/Andres/JFA co-counsel. The Trustee expressly relies upon the representations of Andres as to the accuracy and completeness of the information set forth on EXHIBIT 3. The Parties acknowledge that the amount of the potential fees to the attorneys of record is not fixed for all matters and cases as of

the date of this Agreement. Rather than litigating any such disputes, and in full consideration of the covenants and promises referenced herein, Andres, JFA and the Trustee agree to the division of any fee recovery in the Andres Cases as follows:

    a. Immediately upon receipt by Andres/JFA of any settlement proceeds in any Andres Cases, all litigation expenses, including, without limitation, deposition costs, expert witness fees, court costs and other out of pocket expenses, shall be paid first to the Trustee for expenses incurred by the Debtor and then to Andres/JFA for expenses incurred by Andres/JFA. Andres/JFA agree to promptly provide all supporting documents to enable the Trustee to determine and/or verify the amount of expenses incurred by the Debtor and Andres/JFA in 2015 and thereafter. Trustee may also request and obtain from co-counsel of Debtor and Andres/JFA in any Andres Cases all supporting documents showing any litigation expenses, including, without limitation, deposition costs, expert witness fees, court costs and other out of pocket expenses, incurred and paid by co-counsel to enable the Trustee to determine and/or verify the total amount of expenses incurred in the Andres Cases by the Debtor, Andres/JFA, and co-counsel in 2015 and thereafter. The remaining amount of the recovery in the Andres Cases shall be hereinafter referred to as the "Residual Fee" or "Residual Fees".

    b. Andres shall keep the Trustee reasonably apprised of all major developments in the Andres Cases, including any and all settlement developments.

    c. Andres shall engage in settlement discussions and structure settlements as if there were no fee split of the Residual Fee between Andres and the Trustee. Andres shall not structure settlement discussions or settlements of the Andres Cases in such a way that would tend to protect, augment, or maximize the potential recovery of the Andres portion in division of any Residual Fee at the expense of the Estate. Andres shall account for his time in the Andres Cases in customary, industry standard formats, and shall record only true and accurate time entries in matter description and amount. The Trustee shall only require Andres to deliver time records in cases where Andres is retained on an hourly basis.

    d. The Parties have agreed to divide the Residual Fee in the Andres Cases between the Trustee and Andres/JFA as follows:

        i. Cobb-St. Louis Bank Case- 28% of the Residual Fee to the Estate; 72% to Andres/JFA.

        iii. Cobb-PNC Bank Case- 28% of the Residual Fee to the Estate; 72% to Andres/JFA.

    e. Andres shall proceed with making all transfers to effectuate the aforementioned expense reimbursements and divisions of Residual Fee no later than five (5) business days following receipt of settlement proceeds in any of the Andres Cases.

 f. Andres and JFA represent and warrant that the attached EXHIBIT 3 contains a complete and exhaustive list of all Andres Cases on which Andres was working either at the time Debtor ceased operations or cases from which Andres/JFA may be entitled to a potential recovery of fees.

 g. Andres/JFA have represented that they have entered into co-counsel fee sharing agreements with other attorneys in some of the cases listed on EXHIBIT 3. A true and accurate statement of the current co-counsel arrangements is set forth on EXHIBIT 3, and shall hereinafter be referred to as the "Co-Counsel Arrangements". With respect to the Co-Counsel Arrangements, Andres, JFA and the Trustee have agreed as follows:

  i. Andres and JFA represent, warrant and promise that they have not and will not enter into an arrangement with any co-counsel, attorney or law firm in any of the Andres Cases listed on EXHIBIT 3 wherein fees that the co-counsel, attorney or law firm are entitled to receive pursuant to any Co-Counsel Arrangement are to be later paid to Andres or JFA for any reason, including attempted minimization of the recovery of the Estate in the Fee Disputes;

  ii. Andres and JFA represent and warrant that other than the Co-Counsel Arrangements listed in the attached EXHIBIT 3, Andres and JFA are aware of no other co-counsel or other attorney or law firm which may seek to claim attorneys' fees or expenses in any of Andres Cases;

  iii. Andres and JFA agree to use best efforts to ensure that any co-counsel or other attorneys or law firms claiming entitlement to attorneys' fees or expenses in any of the Andres Cases seek to recover only from fees that are ultimately awarded or paid to JFA pursuant to the terms of this Agreement, and not from the Estate;

  iv. In the event that any co-counsel, attorney or law firm (other than Andres or JFA) asserts a claim or demand of entitlement to attorneys' fees or expenses in any of the Andres Cases at any time, then the Trustee shall have the right, but not the obligation, to vacate the agreement to split the Residual Fee received by or due to Andres or JFA and in the amounts as set forth in the above Paragraph 8(d) for the Andres Case at issue. If the Trustee exercises his right herein to vacate the Paragraph 8(d) split between the Estate and Andres/JFA for the Residual Fee in any of the Andres Cases and no alternate dispute resolution mechanism can be finalized by Andres, JFA and the Trustee and any additional co-counsel, attorneys and/or law firms claiming a portion of the Residual Fee received by or due to Andres or JFA, then Andres, JFA and the Trustee shall interplead the fees received in the Andres Case at issue and proceed with litigating the respective interests of Andres, JFA and the Trustee (and any

        appropriate third parties) in any such Fee Dispute in the Bankruptcy Court (or such other court agreeable to the Trustee) which court shall have jurisdiction to fully adjudicate these claims; and

    v.    Andres, JFA and all of their successors, assigns, agents, attorneys, heirs and representatives agree to indemnify the Trustee, his agents, attorneys, employees, representatives, successors and assigns, as well as the bankruptcy Estate of Debtor (hereinafter the "Estate Entities") from and against any and all debts, claims, demands, damages, actions, suits, expenses, attorneys' fees, costs, liabilities and causes of action of any kind whatsoever asserted at any time by any co-counsel of Andres or JFA or other attorney or law firm, against any of the Estate Entities, related to the recovery of attorney's fees expenses or related compensation in any of the Andres Cases.

    vi.    Andres and JFA may, in their sole discretion, withdraw as co-counsel in any of the Andres Cases at any time including prior to any settlement or final adjudication or dismissal and in the event of such withdrawal, the Trustee and the Estate shall be entitled to receive from Andres and/or JFA only the portion of any Residual Fee that Andres or JFA receive for work performed by Andres or JFA in the Andres Cases prior to withdrawal. Notwithstanding the foregoing, if Andres becomes employed by or contracts with any law firm or attorneys that continue litigating that Andres Case, the Trustee shall be entitled to the full Residual Fee as if Andres and/or JFA had not withdrawn as counsel.

    vii.    If Andres and JFA fails to fully cooperate and comply with the terms and conditions of Paragraph 8 or if there are any material misrepresentations or omissions with regard to Exhibit 3, the Trustee shall have all remedies available to him, whether in law or in equity, for any breach and, in addition thereto, shall be entitled to payment of all attorneys' fees and other costs and expenses incurred by the Trustee in enforcing this provision.

## PAYMENT OF CLAIMS AND SURPLUS

9.    The Trustee agrees that all costs and expenses of administration of the Estate, which shall include for purposes of this Agreement, without limitation, the compensation of fees and reimbursement of expenses of the Trustee and his professionals, and all allowed claims with statutory interest against the Estate, shall first be paid from funds generated by sources other than the Settlement Amount and the amounts recovered from other shareholders or employees of Debtor relating to the TWA Case or any loan repayments made by Debtor to Martin Green (the "Chapter 5 Funds"), to the extent such funds are available.

10.    In the event that the funds then on hand, excluding the Chapter 5 Funds, are insufficient to satisfy the allowed claims and the administrative costs and expenses of the Estate, as described

1812369.1                                9

herein, the Trustee shall pay any remaining administrative costs and expenses and any allowed claims (including statutory interest) from the Settlement Amount, pro rata with any other Chapter 5 Funds. If after payment of all administrative claims and other allowed claims with statutory interest there remains a surplus of funds, the Settlement Amount then held by the Trustee at the time of the full payment of the allowed claims as set forth herein shall be abandoned by the Trustee and refunded to Andres and Frame.

11.     In the event there is a surplus of funds in the Estate after payment of all administrative expenses and allowed claims, the Trustee shall cease efforts to collect new assets of the Estate. Going forward, if there is a surplus of funds in the Estate, all fee split agreements on contingency fee and class action cases (see EXHIBIT 3), referenced herein, shall be rendered moot for the purposes of Estate administration, and any/all additional fees that are paid out on the EXHIBIT 3 contingency fee or class action cases shall be abandoned by the Estate and returned or paid to the Debtor.

## COOPERATION AND REPORTING

12.     Andres and JFA agree to provide full cooperation to the Trustee as the Trustee proceeds with the administration of the Estate and performance of his duties as Trustee for no fee or expense to the Estate. In addition, Andres and JFA agree to provide confirmation of their performance of the duties and obligations set forth in this Agreement to the Trustee upon the Trustee's request. This cooperation shall include, without limitation, cooperation in recovering residual attorneys' fees allegedly owed to the Estate in the class action case styled *In re Bank of America Corp. Securities Litigation*, Case No. 4:99-MD-1264-CEJ (the "Bank of America Case"), and cooperation with the Trustee in conjunction with the Trustee's prosecution of claims against Shareholder Martin Green. In addition, Andres/Frame and JFA agree to comply with the Trustee's requests for additional personal financial information including, without limitation, personal and corporate financial records, bank records, and personal and corporate tax returns until such time as the Settlement Amount is paid in full.

## RELEASES

13.     Provided the Court approves this Settlement, and provided Andres/Frame and JFA have timely cured any Event of Default as described below, upon full and timely receipt by the Trustee of the Settlement Amount, the Trustee, in his capacity as Trustee on behalf of the Estate, shall fully and forever release and discharge Andres, Frame and JFA, and all of their successors, assigns, agents, attorneys, heirs and representatives from any and all debts, claims, demands, damages, actions, suits, expenses, attorneys' fees, costs, liabilities and causes of action of any kind whatsoever, whether known or unknown or unforeseen, whether contingent or liquidated, whether asserted or unasserted, with respect to the Andres-Frame Claims and Andres-Frame Lawsuit, which the Trustee now has, or claims to have from the beginning of time through the date of this Agreement. The Parties expressly agree and acknowledge that the Rent Claims and all claims related to the Rent Lawsuit are NOT released by this Paragraph 13 release or any release provision of this Agreement, and thus those claims shall survive and be completely unaffected by the terms of this Settlement Agreement

1812369.1                                                    10

14.     Effective upon the Bankruptcy Court's approval of this Agreement, Andres, JFA and Frame hereby fully and forever release and discharge the Trustee, his agents, attorneys, employees, representatives, successors and assigns, as well as the bankruptcy Estate of Debtor from any and all debts, claims, demands, damages, actions, suits, expenses, attorneys' fees, costs, liabilities and causes of action of any kind whatsoever, whether known or unknown or unforeseen, whether contingent or unliquidated, whether asserted or unasserted, which Andres, Frame and/or JFA and/or all of their successors, employees, assigns, agents, attorneys and/or representatives now have, have ever had, claim to have or hereafter may have against them, for or by reason of any matter, cause or thing, occurring at any time prior to the execution of this Agreement through the date of Court approval of this Agreement, including any right or claim to any distribution from the Debtor's bankruptcy Estate on account of a proof of claim or to file any claim under 11 U.S.C. § 502(h).  This release does not impair any right of Debtor to receive any surplus as provided above in this Agreement nor does it release any obligations to be performed pursuant to this Agreement.

15.     Notwithstanding the foregoing, in the event that Andres, Frame or JFA file a petition for relief under any chapter of the Bankruptcy Code within ninety (90) days of the receipt by the Trustee of any payment hereunder, or if any involuntary petition is filed within ninety (90) days of the Trustee's receipt of any payment hereunder, the Trustee shall have the right to assert the full balance (not any compromised sum set forth herein) that the Trustee claims is or could be owed the Estate.  If no bankruptcy is filed by or against Andres, Frame or JFA within such time, the releases of the Trustee shall remain in effect.

## DEFAULT AND REMEDIES WITH REGARD TO THE SETTLEMENT AMOUNT

16.     In the event of a) the failure to make payment of any of the Settlement Amount on a timely basis, b) the failure of Andres or Frame to pay the First Mortgage and the note secured thereby in accordance with its terms, c) the failure to maintain full and complete insurance coverage on the Primary Residence naming the Trustee as an additional insured or loss payee and providing proof to the Trustee of such insurance, d) the failure to pay real property taxes on the Primary Residence when due, e) the failure to maintain the Primary Residence in its present good condition, wear and tear excepted and/or pay all bills, which if not paid, could give rise to the assertion of a mechanics' lien against the Primary Residence, f) the failure to provide on a timely basis financial information as required herein or to comply with reasonable requests of to the Trustee to confirm compliance with this Agreement, g) a material misrepresentation of the balance owed on the First Mortgage, h) any material inaccuracy provided with regard to any financial representations or financial statements provided by Andres or Frame or i) any violation as described in Paragraph 6 of the Prohibitions Against Future Transfers, (hereinafter a "Breach") the Trustee shall issue a written notice (a "Notice of Default") to Andres and Frame (the "Breaching Party") by delivery via e-mail to such person or entity at the e-mail addresses listed below.  In the event that the Breaching Party fails to or is unable to cure a curable Breach within ten (10) days of the Trustee's e-mailing the Notice of Default (the "Cure Period"), or in the event that there are Breaches that are not curable, such as a material misrepresentation of Andres or Frame as to their financial condition, said event shall constitute an Event of Default under this Agreement (hereinafter "Event of Default"), and the Breaching Party shall be subject to the remedies set forth below.  The remedies set forth below are not exclusive.  Following an

1812369.1                                           11

Event of Default the Trustee may elect to simultaneously move forward with any one of the remedies, or all of the remedies set forth in this Agreement.

## SALE AND/OR FORECLOSURE REMEDY WITH REGARD TO THE SETTLEMENT AMOUNT

17. Following an Event of Default, Andres/Frame agree to sell the Primary Residence upon the following terms and conditions:

   a. The Trustee shall receive the first $500,000 (or a lower sum if a lower sum is then due the Estate) from the net sale proceeds, plus all of the Trustee's attorneys' fees, expenses and costs associated with the enforcement of the Agreement, Note or Deed of Trust, after payment of the First Mortgage and the other costs of sale.

   b. The Trustee shall have final say on the terms, price, conditions and procedures for the sale of the Personal Residence, including without limitation the selection of the realtor, the list price, the sale price, the closing, and all related decisions incident thereto. Notwithstanding the foregoing, the Trustee shall seek input from Andres/Frame on these matters. All final decisions shall be made by the Trustee in his sole discretion.

   c. In the events Andres and/or Frame fail to cooperate with the Trustee in the sale of the Primary Residence, the Trustee shall have full and complete Power of Attorney to sell the Primary Residence on the terms set forth herein.

   d. As an alternative remedy as set forth in this section, the Trustee shall have the option to proceed to foreclose on the Primary Residence and shall be entitled to the payments provided herein.

   e. The Parties acknowledge that this paragraph 17 shall not operate as a waiver or other restriction of the rights of the Trustee to utilize any and all other remedies available to the Trustee upon an Event of Default.

## CONSENT JUDGMENT REMEDY AS TO THE SETTLEMENT AMOUNT

18. The obligations of Andres/Frame with regard to the Settlement Amount shall be further secured by a Consent Judgment in the amount of $500,000 (the "Consent Judgment"), a copy which is attached hereto as **[EXHIBIT 4]** and incorporated herein by this reference. The rights, duties and obligations of the Parties with respect to the Consent Judgment are set forth below:

   a. The Trustee shall hold the Consent Judgment in abeyance provided there is no Event of Default.

   b. Following an Event of Default, the Trustee may immediately file the Consent Judgment and execute on same.

    c. The amount of the Judgment (the "<u>Judgment Balance</u>") shall include any/all valid credits for payments made toward the Settlement Amount.

    d. The Judgment Balance shall not include any credit or other deduction for Paragraph 2 interest payments made pursuant to this Agreement.

    e. The Estate shall be permitted to recover the Trustee's reasonable attorneys' fees and collection costs and expenses incurred in enforcing the Agreement in conjunction with an Event of Default. Accordingly, Andres/Frame agree that the Judgment Balance shall be increased by the amount of the attorneys' fees and collection costs and expenses incurred by the Trustee.

    f. Andres/Frame hereby waive any/all defenses or opposition to the filing or execution on the Consent Judgment following an Event of Default. Likewise, Andres/Frame waive any/all opposition to action by the Trustee to increase the Judgment Balance as set forth herein.

    g. Post Judgment Interest shall accrue at the rate of seven percent (7%) per annum on the principal outstanding Consent Judgment Balance from the date of an Event of Default.

    h. If the Trustee does not obtain sufficient funds to pay the Consent Judgment in full, the Trustee shall have the right to pursue such other remedies against Andres and/or Frame to collect the unpaid balance.

    i. In the event that the Settlement Amount is paid in full on a timely basis as required by this Agreement such that the Consent Judgment is never filed, the Consent Judgment shall be destroyed following the payment in full of the Settlement Amount.

19. Notwithstanding any of the foregoing, following an Event of Default, the Parties agree that the Trustee shall have the right to make application to the Bankruptcy Court to enforce the terms and conditions of this Agreement. In connection therewith, the Trustee shall be entitled to all costs and expenses in connection with any enforcement of such an Event of Default, including, without limitation, any attorneys' fees. The Trustee shall have such other rights and remedies as permitted by law.

## MISCELLANEOUS

20. The Parties acknowledge that this Agreement is being entered into for purposes of settlement and compromise of disputed claims, and nothing contained herein is intended, or shall be construed, as an admission of guilt, wrongdoing, liability or noncompliance with federal, state or local law, statute, order or regulation, the Bankruptcy Code, tortious act, breach of contract, or violation of common law, or any other wrongdoing whatsoever.

21. It is the intention of the Parties to maintain the status quo with respect to any potential adversary proceeding related to or arising from the Andres/Frame Claims, pending approval of

1812369.1                                                 13

this Agreement by the Bankruptcy Court. Moreover, it is the intention of the Parties that this Agreement serve as a tolling agreement, such that the period commencing on the Petition Date and ending on the later of the last date the Trustee receives the Settlement Amount or the date the Bankruptcy Court enters its Order approving or denying this Agreement (the "Tolling Period"), shall be excluded from the calculation of any period of limitation or repose, and shall be excluded from consideration in connection with any defense of limitations or repose, laches, waiver, estoppel, or any other time-related defenses (collectively, "Time-Related Defenses"), whether contingent or absolute, accrued, liquidated or unliquidated, mature or immature, statutory, contractual, or equitable, applicable to any claims or causes of action owned or possessed by Trustee, relating to or arising out of the Andres/Frame Claims.

22.  In addition to seeking approval of this Agreement, the Trustee agrees to seek approval and authority from the Bankruptcy Court for one of the co-responsible parties of the Debtor to prepare and file on behalf of Debtor amended W-2 forms and any other related tax documents for the tax year 2014, as might be necessary and as allowed by law, to reflect any reductions in income to Andres and Frame that may result from this Agreement and the payment of the Settlement Amount. The Trustee and Andres agree to provide full cooperation in this endeavor. Andres shall pay for any and all additional tax document preparation and related expenses. Further, Andres and Frame agree to promptly provide the Trustee with a copy of any amended W-2 and/or other related tax documents filed by him or on his behalf.

23.  Except as otherwise stated herein, each Party shall bear, his, her or its own costs and expenses in connection with this matter, including attorneys' fees and legal expenses.

24.  The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and all Parties expressly consent thereto.

25.  For purposes of this Agreement, notices shall be sent via electronic mail only to the Parties at their e-mail addresses listed below:

JONATHAN ANDRES
Jonathan Andres:    andres@andreslawpc.com

LAURA FRAME
Laura Frame:  framll1127@yahoo.com

JONATHAN F. ANDRES P.C.
Jonathan Andres:    andres@andreslawpc.com

TRUSTEE
David Sosne:    dsosne@summerscomptonwells.com

With copy to:
Daniel J. Welsh:    dwelsh@summerscomptonwells.com

1812369.1                         14

26. Each Party represents and warrants that he, she or it has consulted with an attorney or has had the opportunity to consult with an attorney with respect to this Agreement and the rights and obligations contained herein.

27. Each Party warrants that he, she or it has full authority to execute this Agreement and acknowledges that the Agreement is subject to the Bankruptcy Court's approval.

28. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective executors, heirs, successors and assigns.

29. The provisions contained in this Agreement constitute the entire agreement between the Parties with regard to the subject matter of this Agreement and may not be amended except by written instrument signed by both parties and approved by the Bankruptcy Court, or by Order of the Bankruptcy Court.

30. This Agreement shall be interpreted, governed by and construed in accordance with the laws of the State of Missouri, without regard to principles of conflicts of law, as such may be consistent with the Bankruptcy Code.

31. This Agreement may be executed in counterparts and via facsimile and electronic mail, and when all counterparts have been executed, each executed counterpart shall have the force and effect of the original. The effective date shall be the date set forth above.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties and Laura Frame have hereto caused this Agreement to be executed.

_____
Jonathan Andres

_____
David A. Sosne, Chapter 7 Trustee for the bankruptcy estate of Green Jacobson, P.C.

_____
Laura Frame

JONATHAN F. ANDRES P.C.

By: _____

Its: __PRESIDENT__

1812369.1

16