**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 15-41404-705** |
| | ) | |
| **GREEN JACOBSON, P.C.,** | ) | **Chapter 7** |
| | ) | |
| **Debtor.** | ) | **[Doc. Nos. 270 & 274]** |

**ORDER DENYING MOTION FOR ABSTENTION**
**AND SUSTAINING OBJECTION TO CLAIM**

The Court heard the following motions on June 8, 2016: (1) David P. Oetting, class representative ("Oetting") Motion for Abstention from or Suspension of Proceedings on Trustee's Objection to Class Claim (Doc. #274) (the "Abstention Motion"), and (2) Trustee David A. Sosne's ("Trustee") Objection to Oetting's Claim No. 1 (Doc. #270) (the "Claim Objection), which was joined in by creditor, SKMDV Holdings, Inc. Oetting appeared pro se. Trustee appeared by his counsel, Brian LaFlamme and Stephen C. Hiotis. SKMDV Holdings, Inc., appeared by its counsel, David A. Warfield. The Motions were argued on June 8, 2016, and were taken under submission at that time. Being duly advised in the premises, the Court **DENIES** the Abstention Motion and **SUSTAINS** the Claim Objections as set forth below.

An involuntary petition in bankruptcy was commenced against Green Jacobson, P.C. ("Debtor") on March 3, 2015 ("Petition Date"). Debtor consented to an order of relief under Chapter 7 of the United States Bankruptcy Code on April 15, 2016. David Sosne was appointed Chapter 7 Trustee in the case on April 16, 2016. Debtor had conducted business as a law firm with its principal office in St. Louis County, Missouri. Oetting timely filed his Claim No. 1 against Debtor's estate seeking more than $10.5 million ("Claim").[1] Oetting indicates that he served as class counsel for the NationsBank class in a class action entitled *In re BankAmerica Corp. Securities Litigation*, 99-MDL-1264-CEJ (E.D.Mo) that resulted in a multi-million dollar settlement to the class. The settlement was approved by the District Court in 2002 and was affirmed on appeal.[2]   Debtor had served as counsel for the NationsBank class in the

---

[1] Oetting has also filed a separate Claim in Debtor's Estate (Claim No. 8). Trustee's counsel indicated at the hearing that the Trustee may object to Claim No. 8. At this point, Claim No. 8 is not in issue.

[2] *In* re *BankAmerica Corporation Securities Litigation*, 227 F.Supp.2d 1103 (E.D.Mo. 2002) *aff'd* 350 F.3d 747 (8th Cir. 2003)  -- in which the District Court approved the settlement over several objections, including those made by Oetting.

*BankAmerica* litigation. The District Court thereafter approved a fee to the NationsBank class counsel of approximately $58 million.

As discussed in more detail below, Oetting's Claim asserts that Debtor was negligent in supervising the administration of the distribution of settlement proceeds, that Debtor should be disgorged of a portion of the fees awarded, and that Debtor is otherwise liable to the NationsBank class for various amounts totaling more than $10.5 million. The Claim sets forth that the accounting firm retained to assist in the distribution of settlement funds, Heffler, Radetich & Saitta, LLP ("Heffler"), had an employee who engaged in a scheme to submit fraudulent claims in the settlement distribution process, causing losses of approximately $5.8 million to the class Oetting represented. Debtor set forth a "Claim Calculation" in his Claim itemizing damages (excluding interest) for:

| | |
|---|---|
| Loss from [Debtor's] negligence in supervising settlement | $5,879,073.36 |
| Unreturned fee award vacated in cy pres appeal | 98,114.34 |
| Unreturned *cy pres* amount (held at LSEM) | 2,636,022.35[3] |
| Subtotal | $ 8,613,210.05 |
| Disgorgement of 18% fee [$8,613,210.05/.82] | $1,890,704.65 |
| TOTAL CLAIM | $10,503,914.70 |

### I. Denial of Motion for Abstention or Suspension of Proceedings

Oetting filed his Abstention Motion on May 9, 2016. Oetting also filed a separate Motion to Withdraw the Reference under 28 U.S.C. § 157(d). The District Court (Judge Sippel) denied Oetting's Motion to Withdraw the Reference in an Order entered May 26, 2016.[4]

Oetting asserted several grounds in support of his Abstention Motion. Initially, Oetting argued that adjudication of his Claim should be suspended in light of the pendency of his Motion to Withdraw the Reference. However, since the District Court subsequently denied Oetting's motion to withdraw, this argument is now moot.

Next, Oetting argued that this Court previously indicated at a status conference that all matters "involving" the *In re BankAmerica Corp. Securities Litigation* class action now before Judge Jackson should be filed with the District Court rather than the Bankruptcy Court.

---

[3] "LSEM" refers to Legal Services of Eastern Missouri, which initially received a *cy pres* distribution of settlement funds, but that award was subsequently reversed as discussed below.
[4] Cause No. 4:16 CV 642 RWS, Doc. #5.

According to Oetting, the Trustee should have filed the Claim Objection in the District Court. This Court has never indicated that every matter that may in some way relate to the *BankAmerica* class action must be filed and adjudicated in the District Court. Adjudication of the Claim Objection here will not infringe upon matters now pending in the class action proceeding.

For example, Oetting's Claim to the "unreturned" *cy pres* award made to Legal Services of Missouri in the *BankAmerica* class action is no longer in issue. It is undisputed that the *cy pres* award was reversed by the Eighth Circuit and the fees have now been returned by Legal Services and deposited with the Clerk for this District Court. (Exhibit B to Trustee's Objections, Doc. #858). At the June 8, 2016 hearing, Oetting did not contest that the funds were returned. Additionally, at the hearing, the Trustee's counsel confirmed that the Trustee made no claim that the returned *cy pres* award funds were property of Debtor's bankruptcy estate.

Similarly, Oetting's damage claim, arising from Debtor's alleged negligence, breach of fiduciary duty and other claims relating to Heffler and the class action settlement fund,  does not implicate matters now pending in the *BankAmerica* class action before Judge Jackson. Oetting acknowledged that there was no such malpractice or similar claim now pending before Judge Jackson. Similarly, Oetting's claim to "disgorge" attorneys' fees previously awarded to Debtor is also a claim or issue that is not pending in the *BankAmerica* class action.

Finally, Oetting asserts damages arising from the $98,114.34 previously awarded to Debtor as supplemental fees, but vacated by the Eighth Circuit's ruling in *In re BankAmerica Corp. Securities Litigation.,* 775 F.3d 1060 (8th Cir. 2015). The Eighth Circuit remanded the issue of the amount, if any, of supplemental attorneys' fees that should be paid to Debtor. Id. at 1068. Thus, that fee amount must be determined by Judge Jackson in the class action suit.[5] In a prior Order, Judge Jackson has indicated that the funds have been safeguarded and that she will decide the issue.[6] Ruling on Oetting's Claim No. 1 now will not interfere with Judge Jackson's adjudication of any supplemental fee award, since her ruling will ultimately determine whether or not such amounts, if any, are owing and thereby property of the estate, which is separate and apart from whether Oetting has a claim against the bankruptcy estate.

---

[5] At the June 8, 2016 hearing, Oetting and counsel for the Trustee  mentioned that another approximate $30,000 or so may be due the settlement fund or the bankruptcy estate.  Again, this is an issue that Judge Jackson can resolve in the class action case.

[6] Case No. 4-99-MD-1264-CEJ,  Doc. #126-1 at pg. 2.

Oetting also argues that abstention of any ruling on Oetting's Claim No. 1 is proper where another court has particular expertise in the issues involved in a case. Oetting's Claim, however, does not involve any particular expertise or novel issues, and does not involve or interfere with issues presently subject to litigation in the *BankAmerica* class action. Nor has Oetting shown that ruling on his Claim will interfere with the administration of the bankruptcy estate or result in inconsistent rulings. On the contrary, abstaining from ruling on Oetting's Claim could result in substantial delays in the administration of Debtor's estate.

Oetting cites 11 U.S.C. § 305 permitting abstention (or dismissal) if "the interests of creditors and debtor would be better served by such dismissal or suspension …." Oetting's Claim for more than $10.5 million is the largest claim filed against Debtor's estate. It is in the best interests of the Debtor and creditors to resolve this Claim sooner than later, so that all interested parties have a firm idea of what distributions may be available to creditors. The adjudication of this proof of claim is a "core proceeding" and there are no substantive or practical reasons why adjudication of the Claim should be delayed; nor are there any grounds for the Claim to be adjudicated by the District Court in the *BankAmerica* class action.

Oetting also cites 28 U.S.C. § 1134(c)(1) which pertains to permissive abstention "in the interests of justice." Courts often look to various criteria in making this determination. *In re Pilipovic*, 2015 WL 7273325 at *4 (E.D.Mo 2015) citing *In re Stabler*, 418 B.R. 764, 769 (BAP 8th Cir. 2009). Here, abstention will negatively affect administration of the bankruptcy estate due to delay in resolving the estate's largest single claim, Oetting's claims are not intertwined with issues to be adjudicated by Judge Jackson in the *BankAmerica* class action, this is a "core proceeding" for the bankruptcy court, and adjudicating will not burden this Court's docket.

The Court concludes that abstention or suspension of the adjudication of Claim No. 1 is not warranted.

## II.  Trustee's Objections to Oetting's Claim No. 1 [7]

By and through its Claim Objection, the Trustee primarily argues that Claim No. 1 is barred by Missouri's five year statute of limitations and that Oetting lacks standing to bring the Claim. The Court finds and concludes that the statute of limitations defense bars the Claim, so the Court will not address the Trustee's other arguments.

---

[7] Creditor, SKMDV Holdings, Inc. joined in the Trustee's Objections to Claim No. 1. (Doc. #272).

4

Oetting's Claim primarily focuses on the loss of $5,879,073.36 allegedly arising from the fraudulent conduct by the former Heffler employee's submission of fraudulent claims paid out of the settlement fund. Oetting asserts in part that Debtor was negligent in employing and supervising Heffler, that the fraudulent claims submitted to the Court should have been readily apparent, that no bond was required to secure the settlement fund, and that after the fraud was discovered Debtor "effectively abandoned the Class as its client," and then refused to sue Heffler. (Oetting Claim No. 1).

Under Missouri law, the statute of limitations for breach of contract, legal malpractice and breach of fiduciary duty is five years. § 516.120 Mo.Rev.Stat.; *Klemme v. Best*, 941 S.W.2d 493, 497 (Mo. banc 1997). The statute of limitations commences when the fact of some damage is known to the complaining party. *Zero Mfg. Co. v. Husch*, 743 S.W.2d 439, 441 (Mo.App.E.D. 1987). "If the *fact* of damage is ascertainable, then the statute of limitations begins to run even if the precise amount of damage is not ascertainable or if some additional damages may occur in the future." *Jordan v. Willens*, 937 S.W.2d 291, 294 (Mo.App.W.D. 1996) (footnote and citations omitted). *Accord, Zero Mfg. Co. v. Husch*, 743 S.W. 2d 439, 441.

Here, the record reflects that Oetting learned about the fraudulent transfers and loss of more than $5.8 million no later than September, 2009. Oetting received notice of the fraudulent claims pursuant to a status report filed with the Court in the class action, which was also confirmed by Oetting's own email to Debtor sent in September, 2009. (Exhibit C and Exhibit D to Trustee's Claim Objection). Indeed, the September, 2009 status report expressly referred to fraudulent claims totaling $5,879,073.36 – which is the exact amount Oetting has set forth in his Claim No. 1. Thus, it is clear that Oetting knew of the fraudulent claims and damage to the settlement fund by September, 2009.[8] Accordingly, Oetting's damages were certainly capable of ascertainment by September, 2009. Debtor's bankruptcy Petition Date was March 3, 2015, which is some five years and five months <u>after</u> Oetting knew that the settlement fund had lost more than $5.8 million. As a result, Oetting's claims for legal malpractice, negligence, failure to supervise, negligent hiring, and breach of fiduciary duty relating to the $5.8 million of fraudulent claims are barred by Missouri's five year statute of limitations.

---

[8] Oetting has not disputed his knowledge of the fraudulent claims in September, 2009;  nor has he submitted or sought to submit any information to the contrary.

Oetting asserted that Debtor fraudulently told him that a tolling agreement had been reached with Heffler (the accounting firm) so that Oetting should not be concerned about timely suing Heffler. (Claim No. 1-1, Part 2, pg. 2). But Oetting conceded at the hearing that there is a lawsuit pending in United States District Court in Philadelphia against Heffler involving the fraudulent claims so that the claim against Heffler has not been barred regardless of any alleged tolling agreement representation by Debtor.[9]

Oetting sets forth a lengthy list of other alleged wrongful conduct by Debtor (e.g. refusing to answer Oetting's questions about the fraud, requesting to remove Oetting as class representative, arguing Oetting lacked standing to object to the *cy pres* award, seeking termination of the class action case). Oetting has not asserted any damages arising from such alleged conduct. Similarly, any claim for the awarded *cy pres* funds is moot since Oetting acknowledged the funds have been returned to the District Court. As discussed above, the approximate $98,000 supplemental fee awarded to Debtor will be addressed by Judge Jackson pursuant to the remand by the Eighth Circuit.

Oetting also seeks "disgorgement" of fees previously received by Debtor in the BankAmerica class action due to Debtor's aforesaid conduct or inaction.[10] However, "disgorgement" is not some independent cause of action. As set forth in Oetting's Claim, the genesis of Oetting's disgorgement claim arose from the initial fraudulent claims involving the Heffler employee, which Oetting knew about by September, 2009. Oetting's alleged damages were capable of ascertainment by September, 2009.  As indicated above, where the fact of some damage is capable of ascertainment, the statute of limitations commences to run even if additional damages will be incurred in the future. *Jordan v. Willens*; *Zero Mfg. Co. v. Husch.* Oetting has not alleged any damages that did not arise from the fraudulent claims known to Oetting by September, 2009 (exclusive of the *cy pres* return of funds claim which is moot, and the supplemental fee award which will be adjudicated by Judge Jackson in the class action pursuant to the mandate of the Eighth Circuit). This is evident from Oetting's itemization of

---

[9] *See Oetting v. Heffler, Radetich & Saitta, LLP*, 2016 WL 1161403 (E.D.Pa. 2016) (certifying a class action on behalf of the NationsBank class against Heffler and others. The initial lawsuit against Heffler was filed more than five years ago in District Court, and  Judge Jackson transferred the case to the U.S. District Court in Philadelphia. *Oetting v. Heffler, Radetich & Saitta, LLP,* 2011 WL 3055235 (E.D.Mo. 2011).

[10] The fee award was made in 2002. *In re BankAmerica Securities Litigation*, 228 F.Supp.2d 1061 (E.D.Mo.2002).

damages described above. Since more than five years have elapsed from the September, 2009 discovery date of damages to the Petition Date, Oetting's disgorgement claim is also time-barred.

Accordingly, IT IS **ORDERED** that Oetting's Motion for Abstention or Suspension of Proceedings on Trustee's Objection to Class Claim (Doc. #274) is **DENIED,** and the Objections to Oetting's Claim No. 1 (Doc. #270) is **SUSTAINED** and the Claim is disallowed.


DATED: November 29, 2016                                CHARLES E. RENDLEN, III
St. Louis, Missouri 63102                               U.S. Bankruptcy Judge
mtc


Copies to:

Stephen C. Hiotis
8909 Ladue Road
St. Louis, MO 63124

United States Department of Justice          Robert E. Eggmann
U.S. Trustee's Office                        Desai Eggmann Mason LLC
111 S. 10th Street, Ste. 6353                7733 Forsyth Boulevard, Suite 800
St. Louis, MO 63102                          Clayton, MO 63105

Internal Revenue Service                     Thomas H. Riske
P.O. Box 7346                                Desai Eggmann Mason LLC
Philadelphia, PA 19101-7346                  7733 Forsyth Blvd., Suite 800
                                             Clayton, MO 63105

SKMDV Holdings, Inc.                          Brian W. Hockett
4235 Austin Ridge Drive                       Thompson Coburn LLP
St. Charles, MO 63304                         One US Bank Plaza
                                              St. Louis, MO 63101


                                              Jacobson Press and Fields PC
                                              168 N Meramec Ave Suite 150
David A. Warfield                             Clayton, MO 63105
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101

Joe Jacobson                                  Allen Press
168 N Meramec Ave Suite 150                   168 N Meramec Ave Suite 150
Clayton, MO 63105                             Clayton, MO 63105