Exhibit A

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is entered into by and between David A. Sosne, Chapter 7 Trustee for the bankruptcy estate of Green Jacobson, P.C. (the "Trustee"), Jonathan Andres ("Andres") and Jonathan F. Andres, PC ("JFA") on this 27th day of June, 2017.

## THE RECITALS

WHEREAS, an involuntary petition in bankruptcy was filed against Green Jacobson, P.C., a Missouri professional corporation ("Debtor") on March 3, 2015 (the "Petition Date") in the United States Bankruptcy Court, Eastern District of Missouri, Eastern Division (the "Bankruptcy Court"), Case Number 15-41404-705 (the "Bankruptcy Case"), which resulted in the creation of the resulting bankruptcy estate ("the Estate"); and

WHEREAS, on April 16, 2015, the Bankruptcy Court entered its order granting relief under Chapter 7 of the United States Bankruptcy Code in Debtor's bankruptcy proceeding, and Trustee was appointed as the Chapter 7 trustee of Debtor's case contemporaneously therewith; and

WHEREAS, at all times relevant hereto Andres was a shareholder of Debtor; and

WHEREAS, Debtor operated a law office located at 7733 Forsyth Boulevard, Suite 700, Clayton, MO, 63105 (the "Premises"); and

WHEREAS on July 1, 2011 SKMDV Holdings, Inc. ("SKMDV") filed a lawsuit against Debtor alleging that Debtor committed professional negligence. The case is styled as *SKMDV Holdings, Inc. vs. Green Jacobson, P.C.* and assigned cause number Cause No. 11SL-CC02664 (the "SKMDV Case"); and

WHEREAS, on November 12, 2014 a Judgment was entered in the SKMDV Case in favor of SKMDV and against Debtor in the amount of $10,500,000 (the "SKMDV Judgment"); and

WHEREAS, Debtor ceased active operations on December 31, 2014; and

WHEREAS, on or about January 22, 2015 Debtor paid the sum of $134,225.94 to Debtor's landlord for the Premises in an effort to "pre pay" anticipated rent, operating expenses and property taxes for the Premises through July 31, 2015 (hereinafter the "Rent Transfer"); and

WHEREAS, Andres formed JFA, a new law firm, on January 23, 2015; and

WHEREAS, JFA and Andres have occupied the Premises at all times relevant hereto; and

WHEREAS, the Trustee has claimed that the Rent Transfer is avoidable under one or more provisions of Chapter 5 of the United States Bankruptcy Code and/or Missouri's Uniform

Fraudulent Transfer Act and that Andres and JFA (along with other entities) are otherwise obligated to reimburse the Estate for their occupancy of the Premises (the "Rent Claims"); and

WHEREAS, the Rent Claims have been asserted against Andres and JFA (along with other defendants) in an adversary complaint filed by the Trustee in Bankruptcy Court styled *David A. Sosne, in his capacity as Chapter 7 Trustee for Green Jacobson, P.C. v. Martin M. Green, et. al.*, and assigned Case No. 15-04160-705 (the "Rent Lawsuit"); and

WHEREAS, to avoid the cost and risk associated with litigating the Rent Claims, the Trustee and Andres and JFA (collectively "Andres/JFA") have engaged in good faith, arm's-length settlement negotiations and have agreed to settle the Rent Claims pursuant to the terms stated in this Agreement; and

WHEREAS, the Trustee has determined that this settlement (hereinafter this "Settlement") is in the best interests of the creditors and the Estate.

NOW, THEREFORE, in consideration of the following covenants, the Trustee, Andres (collectively the "Parties") hereby agree to settle the Rent Claims on the following terms and conditions, subject to approval by the Bankruptcy Court:

## COURT APPROVAL

1.  The Settlement requires the approval of the Bankruptcy Court. In the event that the Bankruptcy Court does not approve the Settlement, the Settlement shall be null and void and the Agreement shall be of no effect. Within five (5) business days of the execution of the Agreement, a Motion to Approve the Settlement (the "Motion") will be filed in the Bankruptcy Court. The Motion shall expressly provide that the Settlement is contingent upon Bankruptcy Court approval. The Parties acknowledge their consent to and approval of the Motion. The Parties agree to provide full cooperation and best efforts in requesting that the Bankruptcy Court sustain the Motion and approve this Settlement and Agreement. In the event this settlement and Agreement are not approved by the Bankruptcy Court, the Settlement and Agreement will be null and void, and the Trustee shall immediately return any payments received pursuant to the terms of this Agreement.

## SETTLEMENT PAYMENT

2.  Contemporaneous with the execution of this Agreement, Trustee and Andres/JFA shall execute a Consent Judgment resolving the Rent Claims. The Consent Judgment, a copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference, shall:

    (i) grant judgment in favor of the Trustee and against Andres/JFA in the amount of Seventy-five Thousand Dollars and No Cents ($75,000.00) plus attorneys' fees and collection costs and expenses;
    (ii) require Andres/JFA to provide to the Trustee, on a monthly basis, personal and business income/expense statements and a detailed report on the status of all pending cases in which the Debtor had and Andres/JFA now possess a financial/fee interest;

1902086

2

(iii) mandate the payment of 33% of all fees and expenses collected on account of each and every case in which Andres/JFA now possess, or in the future may possess, a financial/fee interest until the Consent Judgment is paid in full; and

(iv) permit the Trustee to recover reasonable attorneys' fees and costs and expenses incurred in enforcing this Agreement and collecting under the Consent Judgment;

(v) accrue post-judgment interest at the rate of seven percent (7%) per annum; and

(vi) be secured by Andres and/or JFA's interests in contingent and/or unpaid attorneys' fees and expenses and all other receivables, (the "Collateral") in accordance with that certain Security Agreement by and between the Trustee and Andres/JFA dated contemporaneously herewith and a copy of which is attached hereto as Exhibit "B" and incorporated herein by this reference (the "Security Agreement"). Moreover, Andres/JFA shall execute such assignments or other documents necessary to grant the Trustee with a security interest in the Collateral, including without limitation the Assignment of Attorney's Fees and Expenses attached hereto as Exhibit "C" and incorporated herein by this reference (the "Assignment").

3. The Consent Judgment shall be held in abeyance by the Trustee pending the payment by Andres/JFA to the Trustee of the sum of Twenty Thousand Dollars and No Cents ($20,000.00), which shall be fully due and payable on or before 5:00 pm prevailing Central time on July 1, 2017 (the "Deadline"). This Agreement shall be deemed and shall serve as a Promissory Note for the Twenty Thousand Dollars and No Cents ($20,000.00). Andres/JFA's obligation to pay the Twenty Thousand Dollars and No Cents ($20,000.00) on or before the Deadline shall be secured by the Collateral in accordance with the Security Agreement.

4. Within five (5) business days of receipt in full of the Twenty Thousand Dollars and No Cents ($20,000.00) from Andres/JFA, Trustee shall execute and file a Notice of Dismissal with Prejudice of the Rent Claims against Andres/JFA, with the Bankruptcy Court, in the Rent Lawsuit and shall execute and deliver to Andres/JFA a release of the Security Agreement and Assignment identified above in paragraph 2.

5. In the event Andres/JFA fails to pay the sum of Twenty Thousand Dollars and No Cents ($20,000.00) on or before the Deadline, the Trustee shall submit the Consent Judgment to the Bankruptcy Court for entry in the Rent Lawsuit and shall be authorized to enforce the Consent Judgment, Security Agreement and his rights as a secured creditor to the fullest extent provided by law. Further, Andres and JFA hereby waive any/all defenses or opposition to the filing or execution on the Consent Judgment following his/its failure to pay the Twenty Thousand Dollars and No Cents ($20,000.00) prior to the Deadline.

**PAYMENT OF CLAIMS AND SURPLUS**

6. The Trustee shall separately allocate: (i) funds that are recovered from shareholders of Debtor on account of the settlement of shareholder avoidance claims asserted in separate actions brought by the Trustee against the Shareholders (hereinafter the "Chapter 5 Funds"); and (ii) funds from all other sources (hereinafter the "Other Estate Funds"). Distributions from the Trustee to payment of administrative expenses (including the Trustee's commission) shall

1902086                                            3

hereinafter be referred to as the "Administrative Claims". Distributions from the Trustee to payment of holders of allowed priority unsecured claims, if any, and non-priority unsecured claims, together with any statutory interest that may be due, shall hereinafter collectively be referred to as the "General Claims". Distributions to pay Administrative Claims and General Claims shall be made first from Other Estate Funds and then from Chapter 5 Funds to the extent there are then insufficient Other Estate Funds. Nothing herein shall preclude the Trustee in his discretion from paying Administrative Claims when allowed or making one or more interim distributions to holders of General Claims at any time, even if there are insufficient Other Estate Funds available in the Estate at that time; however, if the Trustee later recovers Other Estate Funds and there is a Surplus Event as defined below, the Trustee shall reimburse the Chapter 5 Funds accounts from the Other Estate Funds, to the extent funds are available, in a sum not to exceed in the aggregate any amounts paid previously from the Chapter 5 Funds to pay Administrative Expenses and General Claims. If all allowed Administrative Claims and General Claims have been paid in full AND there are still funds then remaining in the Estate (such occurrence shall be referred to as a "Surplus Event"), the Trustee shall immediately cease all efforts to collect any other assets of the Debtor or its Estate, including without limitation the Estate's interest in any then remaining contingent fee cases (such assets shall be referred to as "Surplus Assets") and amounts owed under this Agreement, and all efforts to collect any amounts owed pursuant to and under the Consent Judgment attached hereto as Exhibit A.

7. Upon the occurrence of a Surplus Event, the Trustee shall distribute any then remaining Other Estate Funds, together with Surplus Assets, to the Debtor pursuant to 11 U.S.C. §726(a)(6), and the Debtor shall be responsible for allocating such assets among all Shareholders, including Andres. Upon the occurrence of a Surplus Event, the Trustee shall distribute any then remaining Chapter 5 Funds to the Debtor pursuant to 11 U.S.C. §726(a)(6), and the Debtor shall distribute the Chapter 5 Funds to the Shareholders on a pro rata basis calculated by reference to the amount of Chapter 5 Funds actually paid into the Estate by each such Shareholder.

8. Notwithstanding anything else in this Agreement, in the event that any agreement between the Trustee and any other Shareholder provides (or is interpreted to provide) for the different handling of Surplus Assets or the abandonment of claims against a Shareholder or return of any sums paid by a Shareholder, Andres may elect, in his discretion, to take the same benefit afforded to such other Shareholder. In addition, upon the happening of a Surplus Event, nothing in this Agreement shall be construed to limit, impair, release or waive any claim by Andres/JFA to any fees or other assets of the Debtor.

**COOPERATION AND REPORTING**

9. Andres and JFA agree to provide full cooperation to the Trustee as the Trustee proceeds with the administration of the Estate and performance of his duties as Trustee for no fee or expense to the Estate. In addition, Andres and JFA agree to provide confirmation of their performance of the duties and obligations set forth in this Agreement to the Trustee upon the Trustee's request. This cooperation shall include, without limitation, cooperation in recovering residual attorneys' fees allegedly owed to the Estate in the class action case styled *In re Bank of America Corp. Securities Litigation*, Case No. 4:99-MD-1264-CEJ (the "Bank of America

Case"). In addition, Andres/JFA agree to comply with the Trustee's requests for additional financial information including, without limitation, personal and corporate financial records, bank records, and personal and corporate tax returns until such time as the Settlement Amount is paid in full.

## RELEASES

10. Provided the Court approves this Settlement, and provided Andres/JFA have timely cured any event of default as described below, upon full and timely receipt by the Trustee of the amounts due pursuant to this Agreement, the Trustee, in his capacity as Trustee on behalf of the Estate, shall fully and forever release and discharge Andres and JFA, and all of their successors, assigns, agents, attorneys, heirs and representatives from any and all debts, claims, demands, damages, actions, suits, expenses, attorneys' fees, costs, liabilities and causes of action of any kind whatsoever, whether known or unknown or unforeseen, whether contingent or liquidated, whether asserted or unasserted, with respect to the Rent Claims and Rent Lawsuit, which the Trustee now has, or claims to have from the beginning of time through the date of this Agreement.

11. Effective upon the Bankruptcy Court's approval of this Agreement, Andres/JFA hereby fully and forever release and discharge the Trustee, his agents, attorneys, employees, representatives, successors and assigns, as well as the bankruptcy Estate of Debtor from any and all debts, claims, demands, damages, actions, suits, expenses, attorneys' fees, costs, liabilities and causes of action of any kind whatsoever, whether known or unknown or unforeseen, whether contingent or unliquidated, whether asserted or unasserted, which Andres and/or JFA and/or all of their successors, employees, assigns, agents, attorneys and/or representatives now have, have ever had, claim to have or hereafter may have against them, for or by reason of any matter, cause or thing, occurring at any time prior to the execution of this Agreement through the date of Court approval of this Agreement, including any right or claim to any distribution from the Debtor's bankruptcy Estate on account of a proof of claim or to file any claim under 11 U.S.C. § 502(h). This release does not impair any right of Andres/JFA to receive any surplus as provided above in this Agreement nor does it release any obligations to be performed pursuant to this Agreement.

12. Notwithstanding the foregoing, in the event that Andres or JFA file a petition for relief under any chapter of the Bankruptcy Code within ninety (90) days of the receipt by the Trustee of any payment hereunder, or if any involuntary petition is filed within ninety (90) days of the Trustee's receipt of any payment hereunder, the Trustee shall have the right to assert the full balance (not any compromised sum set forth herein) that the Trustee claims is or could be owed the Estate. If no bankruptcy is filed by or against Andres or JFA within such time, the releases of the Trustee shall remain in effect.

## MISCELLANEOUS

13. The Parties acknowledge that this Agreement is being entered into for purposes of settlement and compromise of disputed claims, and nothing contained herein is intended, or shall be construed, as an admission of guilt, wrongdoing, liability or noncompliance with federal, state

1902086

5

or local law, statute, order or regulation, the Bankruptcy Code, tortious act, breach of contract, or violation of common law, or any other wrongdoing whatsoever.

14. It is the intention of the Parties to maintain the status quo with respect to any potential adversary proceeding related to or arising from the Rent Claims, pending approval of this Agreement by the Bankruptcy Court. Moreover, it is the intention of the Parties that this Agreement serve as a tolling agreement, such that the period commencing on the Petition Date and ending on the later of the last date the Trustee receives the Settlement Amount or the date the Bankruptcy Court enters its Order approving or denying this Agreement (the "Tolling Period"), shall be excluded from the calculation of any period of limitation or repose, and shall be excluded from consideration in connection with any defense of limitations or repose, laches, waiver, estoppel, or any other time-related defenses (collectively, "Time-Related Defenses"), whether contingent or absolute, accrued, liquidated or unliquidated, mature or immature, statutory, contractual, or equitable, applicable to any claims or causes of action owned or possessed by Trustee, relating to or arising out of the Rent Claims.

15. Except as otherwise stated herein, each Party shall bear, his, her or its own costs and expenses in connection with this matter, including attorneys' fees and legal expenses.

16. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and all Parties expressly consent thereto.

17. For purposes of this Agreement, notices shall be sent via electronic mail only to the Parties at their e-mail addresses listed below:

JONATHAN ANDRES
Jonathan Andres:      andres@andreslawpc.com

JONATHAN F. ANDRES P.C.
Jonathan Andres:      andres@andreslawpc.com

TRUSTEE
David Sosne:          dsosne@summerscomptonwells.com

With copy to:
Daniel J. Welsh:      dwelsh@summerscomptonwells.com

18. Each Party represents and warrants that he, she or it has consulted with an attorney or has had the opportunity to consult with an attorney with respect to this Agreement and the rights and obligations contained herein.

19. Each Party warrants that he, she or it has full authority to execute this Agreement and acknowledges that the Agreement is subject to the Bankruptcy Court's approval.

20. This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective executors, heirs, successors and assigns.

1902086

6

21. The provisions contained in this Agreement constitute the entire agreement between the Parties with regard to the subject matter of this Agreement and may not be amended except by written instrument signed by both parties and approved by the Bankruptcy Court, or by Order of the Bankruptcy Court.

22. This Agreement shall be interpreted, governed by and construed in accordance with the laws of the State of Missouri, without regard to principles of conflicts of law, as such may be consistent with the Bankruptcy Code.

23. This Agreement may be executed in counterparts and via facsimile and electronic mail, and when all counterparts have been executed, each executed counterpart shall have the force and effect of the original. The effective date shall be the date set forth above.

IN WITNESS WHEREOF, the Parties have hereto caused this Agreement to be executed.

_____  
Jonathan Andres

_____  
David A. Sosne, Chapter 7 Trustee for the bankruptcy estate of Green Jacobson, P.C.

JONATHAN F. ANDRES P.C.

By: _____  
Its: _____President_____

1902086

7

Scanned by CamScanner