# SECURITY AGREEMENT

THIS SECURITY AGREEMENT, shall be effective as of the _____ day of _____, 2017, by and among Jonathan Andres ("Andres") and Jonathan F. Andres, PC ("JFA" and, collectively with Andres, as the "Undersigned") and David A. Sosne, Chapter 7 Trustee for the bankruptcy estate of Green Jacobson, P.C. (referred to collectively as the "Secured Party").

1. <u>Creation of Security Interest</u>. In consideration of financial accommodations given, to be given or to be continued for the benefit of the Undersigned, and in further consideration of the creation and extension of the Liabilities as defined herein, the Undersigned grants to the Secured Party a security interest in the Collateral to secure payment and performance of the Liabilities.

2. <u>Liability</u>. The term "Liability" or "Liabilities" shall mean all of the following: the timely payment and performance of all of the Undersigned's obligations under that Settlement Agreement dated as of _____, by and between the Secured Party and the Undersigned (the "<u>Settlement Agreement</u>"), including all sums due under the Consent Judgment executed by and between the Undersigned and the Secured Party and attached to the Settlement Agreement whether now or hereafter existing.

3. <u>Collateral</u>. The term "Collateral" shall mean:

    a. all payments or distributions, whether in cash, property or otherwise, at any time owing or payable to Andres on or in respect of its interest as a shareholder of JFA;

    b. all of the Undersigned's accounts receivable, any right of the Undersigned to payment for goods sold or leased or for services rendered, (collectively, "<u>Accounts</u>"), and all of the Undersigned's money, contract rights, chattel paper, documents, deposit accounts, securities, investment property and instruments with respect thereto, and all cash and non-cash proceeds therefrom and all of the Undersigned's rights, remedies, security, liens and supporting obligations, in, to and in respect of the foregoing, including, without limitation, rights of stoppage in transit, replevin, repossession and reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, guaranties or other contracts of suretyship with respect to the Accounts, deposits or other security for the obligation of any Account Debtor, and credit and other insurance; and

    c. to the extent not listed above, all of the Undersigned's interest in attorneys' fees and expenses arising from contingency fee, class action and other cases in which Undersigned is now engaged or may be engaged in the future as counsel or co-counsel.

4. <u>Security Interest</u>. The security interest herein granted shall extend to (a) all future sums owed to the Secured Party by the Undersigned for any reason; (b) any proceeds of the Collateral; and (c) after acquired property of the same type, kind or nature purchased by the Undersigned, whether as replacement or otherwise.

5. <u>Warranties</u>. The Undersigned warrants, represents and agrees that the security interest granted to the Secured Party in the Collateral shall constitute the first lien and the Collateral shall continue to be free from all pledges, liens, encumbrances and security interests or other claims in favor of the Secured Party.

1851805.1

1

EXHIBIT B

6. <u>Acts of Default</u>. Any of the following shall constitute a "default" or "event of default": The failure of the Undersigned to pay or perform any portion of the Liabilities when due.

7. <u>Remedies</u>. In the event of default, the Secured Party may without the requirement of notice or demand, at its option, and in addition to and cumulative with all its rights and remedies at law or equity, do any, all or any combination of the following:

   a. Declare any or all obligations secured hereby immediately due and payable;

   b. Exercise any and all remedies of a secured party under the Uniform Commercial Code; or

   c. Any sale or disposition of Collateral may be made without demand of performance and any requirement of applicable law for reasonable notice to the Undersigned shall be met if such notice is mailed, postage prepaid, to the Undersigned at its address as it appears herein or as last shown on the records of the Secured Party at least ten (10) business days before the time of sale, disposition or other event giving rise to the notice. The Undersigned agrees it shall be reasonable for the Secured Party to sell the collateral security on credit for present or future delivery without any assumption of personal liability by purchaser. In case of a public sale, notice published by Secured Party for ten (10) days in a newspaper of general circulation in the County of St. Louis, Missouri shall be sufficient. The proceeds of any sale, or sales, of Collateral shall be applied by Secured Party in the following order: (i) to reasonable expenses, including expense for any legal services, arising from the enforcement of any of the provisions hereof, or of any of the Liabilities, or of any actual or attempted sale; (ii) in satisfaction of the Liabilities with the right of Secured Party to distribute or allocate such proceeds as Secured Party shall elect, and its determination with respect to such allocation shall be conclusive, however making proper rebate of interest or discount in case of allocation to any item not due; (iii) in satisfaction of obligations secured by any subordinate security interest in or other lien on the Collateral of the Secured Party receives an authenticated demand for proceeds before distribution of the proceeds is completed; and (iv) to the payment of any surplus remaining after payment of the amounts mentioned, to the Undersigned or to whomsoever may be lawfully entitled thereto.

8. <u>Cumulative Remedies</u>. The rights, remedies and powers of Secured Party under this Security Agreement are cumulative and do not exclude any other right which Secured Party may have independent of this Security Agreement, and may be exercised or not exercised at the discretion of Secured Party: (a) without regard to any rights of the Undersigned; (b) without forfeiture or waiver because of any delay or forbearance in the exercising thereof; (c) without imposing any liability on Secured Party for exercising or failure to exercise; and (d) in the event of a single or partial exercise thereof, without precluding further exercise thereof.

9. <u>Benefit and Term</u>. This Security Agreement benefits the Secured Party and benefits the Secured Party's successors and assigns and binds the Undersigned and its successors and assigns. This Security Agreement shall continue until payment or performance of the Liabilities as defined herein is made and until payment is made of any loss or damage incurred by the Secured Party with respect to any matter covered by this Security Agreement.

10. <u>Time is of the Essence</u>.  Time is of the essence in the performance of each and every of the obligations and duties contained in this Security Agreement.

11. <u>Notice</u>.  For purposes of this Security Agreement, notices shall be sent via electronic mail only to the Parties at their e-mail addresses listed below:

<u>JONATHAN ANDRES</u>
Jonathan Andres:	andres@andreslawpc.com

<u>JONATHAN F. ANDRES P.C.</u>
Jonathan Andres:	andres@andreslawpc.com

<u>TRUSTEE</u>
David Sosne:	dsosne@summerscomptonwells.com

With copy to:

Daniel J. Welsh:	dwelsh@summerscomptonwells.com

12. <u>Severability</u>.  In the event any of the provisions of this Security Agreement are determined to be invalid or unenforceable, the same shall be deemed severable from the remainder of this Security Agreement and shall not cause the invalidity or unenforceability of the remainder of this Security Agreement.

13. <u>Amendment</u>.  An amendment of this Security Agreement must be in writing and signed by the Secured Party and the Undersigned; such an amendment will not affect, release, modify or otherwise affect the liability or obligation of any other party hereto unless such amendment shall explicitly modify or alter such obligation and shall be signed by such other party.

14. <u>Power of Attorney</u>. The Undersigned hereby irrevocably constitutes and appoints Seller, its successors and assigns, its true and lawful attorney-in-fact, with full power and authority and with full power of substitution, at the expense of the Undersigned, either in the Secured Party's own name or in the name of the Undersigned, at any time and from time to time, in each case as the Secured Party in its reasonable discretion may determine, (a) to execute, deliver and file financing statements with respect to the Collateral described herein and to execute, deliver and file amendments to and continuations of such financing statements as the Secured Party may deem necessary or appropriate, and (b) upon the occurrence and during the continuance of any event of default under this Agreement, (i) to take any action and execute any instruments that such attorney-in-fact may deem necessary or advisable to accomplish the purposes of this Agreement, (ii) to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for any and all sums or properties that may be or become due, payable or distributable in respect of the Collateral or that constitute a part thereof, with full power to settle, adjust or compromise any claim thereunder or therefor as fully as the Undersigned, (iii) to endorse or sign the name of the Undersigned on all instruments given in payment or in part payment thereof and all documents of satisfaction, discharge or receipt required or requested in connection therewith, and (iv) to file or take any action or institute any case or proceeding that the Secured Party may deem necessary or appropriate to collect or otherwise realize upon any or all of the Collateral, or effect a transfer thereof, or that may

1851805.1                                        3

be necessary or appropriate to protect and preserve the right, title and interest of the Secured Party in and to the Collateral and the security intended to be afforded by this Agreement.

   IN WITNESS WHEREOF, the parties hereto have executed this Security Agreement as of the day and year first above written.

_____
David A. Sosne, Chapter 7 Trustee for the bankruptcy estate of Green Jacobson, P.C.


_____
Jonathan Andres


JONATHAN F. ANDRES P.C.

By: _____
Its: _____

1851805.1        4