UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: **#481** | ) | Case No. 15-41404-705 |
| | ) | |
| GREEN JACOBSON, P.C., | ) | Hon. Charles E. Rendlen |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |

**ORDER ESTABLISHING AUTHORIZING INTERIM DISTRIBUTION BY CHAPTER 7 ESTATE TO QUALIFIED SETTLEMENT FUND**

This matter comes before the Court upon the Emergency Motion for Interim Distribution to Holders of Allowed Claims or for Similar Relief (dkt. # 481) (the "Motion") filed by SKMDV Holdings, Inc. ("SKMDV"). Due notice of the Motion having been given to all creditors holding an interest in the subject matter of the Motion. David A. Sosne, the chapter 7 trustee for the Debtor (the "Chapter 7 Trustee"), filed a Limited Objection (dkt. # 488) to the Motion (the "Limited Objection"). At the hearing on the Motion, the Chapter 7 Trustee and SKMDV announced they have reached an agreement resolving the Limited Objection. Good cause exists for entry of this Order,

IT IS HEREBY ORDERED that

1. The Motion is GRANTED on the terms and conditions set forth herein.

2. David A. Sosne, in his capacity as the chapter 7 Trustee for the Debtor (the "Chapter 7 Trustee"), is authorized and directed to execute the Green Jacobson QSF Trust Agreement (the "Agreement") substantially in the form attached hereto as Exhibit A and incorporated herein by this reference.

3. Seth Albin (the "Administrator") is approved as the Administrator of the Green Jacobson Qualified Settlement Fund (the "QSF Trust"), and he is also authorized and directed to execute the Agreement.

4. Within two business days after the QSF Trust is fully established and its bank account opened, the Chapter 7 Trustee shall transfer to the QSF Trust the sum of $2,500,000 to be held and administered pursuant to the terms of the Agreement and applicable law.

6669792.1

5. Within three business days after funding of the QSF Account, the Administrator shall cause to be posted a surety bond in an amount not less than $2,500,000 in respect of his obligations as the Administrator of the QSF Trust, with such bond to be a form acceptable to the Office of the United States Trustee.

6. Within three business days after entry of this Order, the Chapter 7 Trustee is authorized and directed to pay Martindale, LLC all remaining amounts due under Claim No. 2 (filed June 1, 2015) in full satisfaction of Martindale, LLC's claim.

7. The Chapter 7 Trustee shall hold in in the Chapter 7 estate's bank account a sum equal to $85,005.77 as a reserve for Claim No. 9 filed by the Internal Revenue Service, and the balance of funds in the Chapter 7 estate's account shall not fall below $85,005.77 except upon further order of the Court.

8. The QSF Trust is intended to qualify as a "QSF Trust" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the United States Internal Revenue Code (the "IRC").

9. This Court shall retain continuing jurisdiction over the QSF Trust pursuant to Treasury Regulation Section 1.46B-1(c)(1) and as set forth in the Agreement.

St. Louis, Missouri

DATED: December 19, 2017
St. Louis, Missouri 63102
mtc

CHARLES E. RENDLEN, III
U.S. Bankruptcy Judge

# Exhibit A

## Qualified Settlement Fund Trust Agreement

**GREEN JACOBSON QSF TRUST AGREEMENT**

This **GREEN JACOBSON QSF TRUST AGREEMENT** (the "Agreement"), dated December 19, 2017, is made by and between (i) DAVID A. SOSNE, Chapter 7 Bankruptcy Trustee for Green Jacobson, P.C., Case No. 15-41404-705 (the "Bankruptcy Trustee") as the transferor and (ii) SETH ALBIN, a Missouri resident, as the transferee and the administrator of the QSF Trust (the "Administrator").

**W I T N E S S E T H:**

WHEREAS, on April 15, 2015, the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court") entered an order for relief under Chapter 7 of the United States Bankruptcy Code against Green Jacobson, P.C. ("Green Jacobson");

WHEREAS, Green Jacobson's Chapter 7 bankruptcy case is pending in the Bankruptcy Court as Case No. 15-41404-705 (the "Bankruptcy Case"); and

WHEREAS, on April 16, 2015, the Bankruptcy Trustee was appointed the Chapter 7 trustee in bankruptcy for Green Jacobson; and

WHEREAS, the Bankruptcy Court entered an order fixing August 3, 2015 as the final date for creditors of Green Jacobson to file proofs of claim in the Bankruptcy Case; and

WHEREAS, on June 6, 2015, SKMDV Holdings, Inc. ("SKMDV") filed a proof of claim (as thereafter amended, the "SKMDV Claim") in the Bankruptcy Case arising out of a prepetition judgment obtained by SKMDV against Green Jacobson for legal malpractice; and

WHEREAS, after the entry of the order for relief, the Missouri Court of Appeals upheld SKMDV's judgment for malpractice (except for certain interest) and the Missouri Supreme Court declined to accept transfer, so the SKMDV Claim is now an allowed claim in the Bankruptcy Case;

WHEREAS, on May 20, 2015, David P. Oetting, in his capacity as the purported Class Representative in In re Bank of America Securities Litigation ("Oetting") filed a proof of claim (as thereafter amended, the "Oetting Claim") arising out of Green Jacobson's alleged negligence and alleged breach of fiduciary duty; and

WHEREAS, both the SKMDV Claim and the Oetting Claim both arise of tort law and neither of them arise out of the obligations of Green Jacobson or the Bankruptcy Trustee to make payments to general trade creditors or debtholders of Green Jacobson; and

WHEREAS, on April 16, 2016, the Bankruptcy Trustee filed in the Bankruptcy Court an objection (the "Oetting Claim Objection") to the Oetting Claim;

WHEREAS, on November 29, 2016, the Bankruptcy Court sustained the Claim Objection and disallowed the Oetting Claim ("Oetting Class Disallowance Order"); and

14022297.1

WHEREAS, on December 7, 2016, Oetting appealed the Claims Disallowance Order (the "Appeal") to the United States District Court for the Eastern District of Missouri (the "District Court"); and

WHEREAS, on June 13, 2017, the District Court dismissed the Appeal; and

WHEREAS, on July 3, 2017, Oetting filed with the District Court a Motion for Reconsideration or Rehearing (the "Reconsideration Motion"); and

WHEREAS, the District Court has yet to rule on the Reconsideration Motion; and

WHEREAS, because of the Reconsideration Motion, the Oetting Claim remains a disputed claim in the Bankruptcy Case; and

WHEREAS, the ultimate resolution of the validity and/or amount of the Oetting Claim will have a significant impact on the amount of distribution available to other holds of allowed general unsecured claims, including SKMDV; and

WHEREAS, on December 19, 2017, the Bankruptcy Court entered an order authorizing and directing the Bankruptcy Trustee to enter into this Agreement (the "Approval Order") creating a trust (the "QSF Trust") for the benefit of SKMDV and Oetting (collectively the "Beneficiaries"); and

WHEREAS, the QSF Trust is intended to qualify as a "QSF Trust" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the United States Internal Revenue Code (the "IRC").

NOW, THEREFORE, it is hereby agreed as follows:

**Article I.**

**DECLARATION OF QSF TRUST**

**Section 1.01    Creation and Name.** The trust created hereby shall be known as the "Green Jacobson QSF Trust". The assets and administration of the QSF Trust shall be managed by the Administrator in accordance with this Agreement and applicable law.

**Section 1.02    Purpose.** The purpose of the QSF Trust is to implement and to carry out the provisions and purposes of the Approval Order by establishing a trust for the benefit of the Beneficiaries in accordance with the terms and conditions set forth in this Agreement and the Approval Order.

**Section 1.03    QSF Trust.** The QSF is subject to the continuing jurisdiction of the Bankruptcy Court and is intended to be a "Qualified Settlement Fund" within the meaning of Section 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the IRC. The Bankruptcy Trustee shall utilize his best efforts to take any action or cause the QSF Trust to take any action necessary to create and maintain the status of the QSF Trust as a Qualified Settlement Fund under the IRC.

**Section 1.04   Transfer of Assets.**  Pursuant to the Approval Order, on the Effective Date (as defined below), the Bankruptcy Trustee shall transfer $2,500,000 in cash or cash equivalents to the QSF Trust. The Bankruptcy Trustee may thereafter transfer additional amounts to the QSF Trust pursuant to past or future orders of the Bankruptcy Court.  All assets received by the QSF Trust and any earnings thereon (the "QSF Trust Assets") shall be held, administered and disbursed by the Administrator under the terms of this Agreement.

**Section 1.05   Acceptance of Assets and Assumption of Liabilities.**  The Administrator (a) agrees and consents to act as the Administrator hereunder, and (b) accepts the transfer of the funds from the Bankruptcy Trustee on the Effective Date and will accept any other amounts that may be distributed to the QSF Trust by the Bankruptcy Trustee thereafter on behalf of the QSF Trust.

**Section 1.06   No Authority to Transact Business.**  The purpose of the QSF Trust is limited to the matters set forth herein and this Agreement shall not be construed to confer upon the Administrator any authority to carry on any business or activity for profit other than the holding, investment, and disbursement of QSF Trust Funds in accordance with the terms of the Approval Order, this Agreement, or any subsequent order of the Bankruptcy Court.

**Section 1.07   Effective Date.**  This Agreement shall become effective (the "Effective Date")  upon the funding of the QSF Trust by the Bankruptcy Trustee.

## Article II.

## POWERS OF QSF TRUST ADMINISTRATION

**Section 2.01   Administrator.**  The Administrator shall at all times administer the QSF Trust and the QSF Trust Assets in accordance with the purposes of the QSF Trust set forth herein.

**Section 2.02   Administrator's Powers.**  The Administrator shall be vested with all powers necessary to effectuate the purpose of the QSF Trust.  Without limiting the generality of the foregoing, the Administrator shall have the power to:

(A) Receive and hold the QSF Trust Assets and exercise all rights and powers with respect thereto, in accordance with the terms and conditions of the this Agreement;

(B) Invest the QSF Trust Assets as set forth in Article V hereof;

(C) Employ any attorneys, accountants, or other professionals (collectively, the "QSF Professionals"), without the necessity for prior Bankruptcy Court approval, to effectuate the purpose of the QSF Trust, maintain and administer the QSF Trust, and prepare any necessary filings with any governmental units, including without limitation tax returns;

(D) Establish such funds, reserves and accounts as the Administrator may consider necessary, appropriate or desirable in fulfilling the purpose of the QSF Trust;

(E) Pay all reasonable, necessary and actual expenses related to establishing and administering the QSF Trust, including without limitation payment of normal bank charges, operating costs, bond premiums, and the fees of the Administrator and the QSF Professionals as described in Article IV of this Agreement (all of the foregoing expenses and fees shall be referred to as the "<u>QSF Expenses</u>");

(F) Execute and deliver such instruments as the Administrator may consider necessary, appropriate or desirable in administering the QSF Trust; and

(G) Enter into such other arrangements with third parties as the Administrator may consider necessary, appropriate or desirable in fulfilling the purpose of the QSF Trust, provided such arrangements do not conflict with any other provision of this Agreement.

## Article III.

### ACCOUNTS, REPORTS AND INVESTMENTS

**Section 3.01** **Accounts.** The Administrator may from time to time create such accounts and reserves for the QSF Trust as the Administrator, may consider necessary, appropriate or desirable in order to provide for payment, or to make provisions for future payment to the Beneficiaries pursuant to order of the Bankruptcy Court.

**Section 3.02** **Reports**. On or before July 1, 2018 and continuing every six months thereafter until the QSF Trust is terminated, the Administrator shall cause to be filed in the Bankruptcy Case a report showing all receipts and expenditures made to or from the QSF Trust.

**Section 3.03** **Permitted Investments.** The Administrator must segregate QSF Trust Assets into one or more accounts and may not commingle non-QSF Trust Assets with QSF Trust Assets. The Administrator may invest QSF Trust Assets only in investments that are insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States ("<u>Permitted Investments</u>") or in a qualified mutual fund that invests only in Permitted Investments.

## Article IV.

### ADMINISTRATOR

**Section 4.01** **Supervision.** The Administrator shall operate the QSF Trust.

**Section 4.02** **Terms of Service; Resignation, Removal, or Death of the Administrator.** The Administrator shall serve for the duration of the QSF Trust subject to the terms hereof. The Administrator may resign at any time by providing written notice to the Bankruptcy Trustee and filing such notice with the Bankruptcy Court. Such notice shall specify a date when such resignation shall take effect that shall not be less than sixty days after the date such notice is given, where practicable. The Administrator may be removed, with or without cause, only by an order of the Bankruptcy Court. Upon the resignation, removal or death of the Administrator, the Bankruptcy Trustee shall promptly request the Bankruptcy Court to appoint a successor Administrator who shall have the same duties and responsibilities and enjoy the same

14022297.1 - 4 -

rights as the original Administrator.  Any references to "Administrator" herein shall, if the context requires, be deemed a reference to any successor Administrator.

**Section 4.03    Limitations on Liability of Administrator.**  The Administrator shall not be liable to the QSF Trust or to any Beneficiaries for anything done or omitted to be done in accordance with the terms of this Agreement, the Approval Order or any subsequent order entered by the Bankruptcy Court, so long as the Administrator's action or omissions were done in good faith and without willful or wanton misconduct. The Administrator shall be entitled to rely upon any notice, consent, certificate, affidavit, statement, paper, document, writing or communication reasonably believed by it to be genuine and to have been signed, sent or made by the proper person or persons.

**Section 4.04    Indemnification.** The QSF Trust shall indemnify, defend and hold harmless, the Administrator, the QSF Professionals, and their respective affiliates, officers, directors, employees and agents (collectively referred to as the "Indemnitees") against any and all claims, demands, suits, liabilities, awards, expenses, losses, costs, fees (including reasonable attorneys' fees and costs), damages, causes of action and judgments incurred by the Indemnitees in the performance of their respective duties hereunder; provided that the Indemnitees, whether one or more than one, acted in good faith and in a manner that such Indemnitee(s) reasonably believed to be in or not opposed to the best interests of the QSF Trust and in furtherance of its purposes.

**Section 4.05    Compensation and Expenses of Administrator and QSF Professionals.**  The Administrator and any QSF Professionals shall receive compensation from the QSF Trust calculated by multiplying (x) the number of hours spent working on matters relating to establishment and administration of the QSF Trust by (y) the normal hourly rate charged to other similar clients by the Administrator or the QSF Professional. In addition, the Administrator and all QSF Professionals may be reimbursed from the QSF Trust for any actual and necessary out-to-pocket expenses incurred in working on behalf of the QSF Trust.  No prior approval by the Bankruptcy Court is required for the payment by the QSF Trust of fees or expenses of the Administrator and QSF Professionals until the aggregate of all such fees and expenses reaches $5,000 ("Base Fee Amount").  Payment of fees and expenses in excess of the Base Fee Amount shall be subject to further order of the Bankruptcy Court after notice and hearing to the Bankruptcy Trustee and the Beneficiaries.

**Section 4.06    Bond.**  The Administrator shall be required to post a bond or other form of surety as described in the Approval Order.  All costs related to the surety bond, including the premium, may be paid from the QSF Assets and shall not be counted as part of the Base Fee Amount.

**Section 4.07    Distributions to Beneficiaries.**  The Administrator shall distribute QSF Trust Assets to Beneficiaries only pursuant to order(s) entered by the Bankruptcy Court in the Bankruptcy Case, after notice to the Bankruptcy Trustee, the Administrator, and the Beneficiaries.

## Article V.

## QSF TRUST

**Section 5.01** **Tax Treatment.**  The QSF Trust is intended to be treated for U.S. federal income tax purposes as a "QSF Trust" as described within section 1.468B-1 *et seq.* of the Treasury Regulations.  Accordingly, for all U.S. federal income tax purposes the transfer of assets to the QSF Trust will be treated as a transfer satisfying the requirements of section 1.468B-1(c) of the Treasury Regulations by the Bankruptcy Trustee, as transferor, for distribution to the Beneficiaries subject to further order of the Bankruptcy Court.

**Section 5.02** **No Right to Reversion with Respect to QSF Trust Assets.**  Neither the Bankruptcy Trustee nor the Green Jacobson bankruptcy estate will have any right to any refunds or reversion with respect to any QSF Trust Assets or any earnings thereon.

**Section 5.03** **Obligations of the Administrator.**  The Administrator shall be the "administrator" (as defined in section 1.468B-2(k) of the Treasury Regulations) of the QSF Trust and shall (a) promptly obtain a federal Taxpayer Identification Number for the QSF Trust, (b) timely file such income tax and other returns and statements and timely pay all taxes, if any, required to be paid from the assets in the QSF Trust as required by law and in accordance with the provisions of the Approval Order and this Agreement; (c) comply with all withholding obligations, as required under the applicable provisions of the IRC and of any state law and the regulations promulgated thereunder; (d) meet all other requirements necessary to qualify and maintain qualification of the QSF Trust as a "QSF Trust" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations; and (e) take no action that could cause the QSF Trust to fail to qualify as a "QSF Trust" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations.

**Section 5.04** **Savings Provision.**  Notwithstanding anything to the contrary herein, in the event that any provision of this Agreement shall at any time be considered cause for the QSF Trust to fail to qualify as a "qualified settlement fund" under Internal Revenue Code § 468B and Treasury Regulations § 1.468B-1 *et seq.*, such offending provision shall be considered null, void, and of no effect, without any action by any court or by the Administrator, so that the QSF Trust continues to qualify as a qualified settlement fund.  In the event that this section applies to render an offending provision null, void, or of no effect, the remainder of this Agreement shall not be affected thereby, and each remaining provision of this Agreement shall be valid and enforced to the fullest extent permitted by law

**Section 5.05** **No Contravention of Requirements.**  No provision in this Agreement shall be construed to mandate any distribution on any claim or other action that would contravene the QSF Trust's compliance with the requirements of a "QSF Trust" within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the IRC.

**Section 5.06** **Termination of QSF Trust**.  Upon payment of all QSF Trust Expenses and final distribution to the Beneficiaries of all remaining  QSF Trust Assets,  and as long as the parties do not expect any further distributions to the QSF Trust from the Bankruptcy Trustee, the

Administrator shall promptly seek authority from the Bankruptcy Court to wind down the QSF Trust, including without limitation filing a final tax return.

## Article VI.

### GENERAL TERMS AND PROVISIONS

**Section 6.01** **Irrevocable.** The QSF Trust is irrevocable.

**Section 6.02** **Amendments.** This Agreement may be amended only by a writing signed by the parties hereto that is authorized by an order of the Bankruptcy Court.

**Section 6.03** **Severability.** Subject to the savings provision in this Agreement, should any provision in this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Agreement.

**Section 6.04** **Notices.**

(A) Any notices or other communications required or permitted hereunder to any of the following parties shall be in writing and delivered at the address, email address for such party designated below, or in accordance with such other instructions as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

    **To Bankruptcy Trustee:**

        DAVID A. SOSNE, Esq.
        Summers Compton Wells
        8909 Ladue Road
        St. Louis, Missouri 63124
        Email: dsosne@summerscomptonwells.com

    with a copy to:

        BRIAN J. LAFLAMME, Esq.
        Summers Compton Wells
        8909 Ladue Road
        St. Louis, Missouri 63124
        Email: blaflamme@summerscomptonwells.com

    **To the Administrator**:

        SETH ALBIN, Esq.
        7710 Carondelet Avenue, Suite 405
        St. Louis, MO 63105
        salbin@albinlawstl.com

>   with a copy to:
>
>>   Paul Randolph
>>   Office of the United States Trustee
>>   111 South Tenth Street
>>   Room 6353
>>   St. Louis, MO 63102
>>   Paul.a.randolph@usdoj.gov

   (B)   All notices and communications in accordance with this Section shall be deemed given (1) when sent by email before 5:00 p.m., prevailing Central time, on a Business Day with a copy of such email sent on the same day to the recipient by reputable overnight courier service (charges prepaid), (2) three days after deposit in the U.S. mail or (3) one Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid).

   **Section 6.05**   **Successors and Assigns.**   The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, devisees, executors, personal representatives, permitted successors, trustees, receivers and permitted assigns.

   **Section 6.06**   **Entire Agreement; No Waiver.**   The entire agreement of the parties relating to the subject matter of this Agreement is contained herein. This Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof. No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

   **Section 6.07**   **Headings.**   The headings used in this Agreement are inserted for convenience only and do not constitute a portion of this Agreement, nor in any manner affect the construction of the provisions of this Agreement.

   **Section 6.08**   **Governing Law.**   This Agreement shall be governed by, and construed in accordance with, the laws of the State of Missouri.

   **Section 6.09**   **Settlor's Representative and Cooperation.**   The Bankruptcy Trustee is hereby irrevocably designated as the settlor of the QSF Trust, and it is hereby authorized to take any action required as such regarding this Agreement.  The Bankruptcy Trustee agrees to cooperate in implementing the goals and objectives of the QSF Trust.

   **Section 6.10**   **Counterpart Signatures, Etc.;**   This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall

14022297.1

- 8 -

together constitute but one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

    IN WITNESS WHEREOF, the Bankruptcy Trustee and the Administrator have executed this Agreement as of the date and year set forth above.

| | |
|---|---|
| _____ | _____ |
| David A. Sosne, not individually but in his capacity as the trustee in bankruptcy for Green Jacobson, P.C., Case No. 15-41404-705 pending in the United States Bankruptcy court for the Eastern District of Missouri. | Seth Albin, as Administrator |